IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HESTAL LIPSCOMB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-477-SLR |
| | ) | |
| ELECTRONIC DATA SYSTEMS | ) | |
| CORPORATION, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

## OPENING BRIEF IN SUPPORT OF DEFENDANT ELECTRONIC DATA SYSTEMS CORPORATION'S MOTION FOR SUMMARY JUDGMENT

Of Counsel:
Thomas J. Piatak
Roger G. Trim
Baker & Hostetler LLP
3200 National City Center
1900 East Ninth Street
Cleveland, OH  44114-3485
Telephone: (216) 621-0200

Richard G. Elliott, Jr. (#687)
elliott@rlf.com
Alyssa M. Schwartz (#4351)
schwartz@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
Telephone: (302) 651-7700

Attorneys for Defendant
Electronic Data Systems Corporation

Dated:  June 15, 2006

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

I.     NATURE AND STAGE OF PROCEEDINGS ............................................... 1

II.    SUMMARY OF ARGUMENT ......................................................................... 1

III.   FACTUAL BACKGROUND ............................................................................. 2

       A.    Lipscomb's Initial Employment at EDS and Recurrent Tardiness and
             Attendance Issues ............................................................................................. 2

       B.    Lipscomb's Tardiness and Attendance Issues Continue Into 2004 ....................... 4

       C.    Lipscomb Is Absent From Work From April 29, 2004 Through May 15,
             2004 ................................................................................................................... 5

       D.    Lipscomb Returns From Leave, But Fails to Provide an FMLA Medical
             Certification Despite Repeated Reminders From CIGNA and EDS ...................... 7

       E.    Lipscomb Is Separated Based On Her Failure to Provide a Medical
             Certification Validating Her Purported FMLA Leave ......................................... 10

IV.    LAW AND ARGUMENT ............................................................................... 11

       A.    Lipscomb Was Not Entitled to FMLA Leave Because She Failed to
             Submit a Medical Certification to CIGNA Despite Multiple Reminders
             From EDS and CIGNA ...................................................................................... 11

       B.    The STD Benefits Form Is Insufficient as a Matter of Law to Constitute a
             Valid FMLA Certification ................................................................................. 16

       C.    Lipscomb Has Produced No Evidence Supporting Her FMLA Retaliation
             Claim ................................................................................................................ 17

V.     CONCLUSION ............................................................................................... 20

RLF1-3026439-1

# TABLE OF AUTHORITIES

Page

**Cases**

Brown v. SBC Communic'ns, Inc.,
   2005 U.S. Dist. LEXIS 41599, (E.D. Wis. 2005) ........................................................... 15

Collier v. Target Stores Corp.,
   2005 U.S. Dist. LEXIS 6262, (D. Del. 2005) ................................................................. 18

Geromanos v. Columbia Univ.,
   322 F. Supp. 2d 420 (S.D.N.Y. 2004) ................................................................... 11, 12

Jalil v. Avdel Corp.,
   873 F.2d 701 (3d. Cir. 1989) ......................................................................................... 19

Junker v. Amana Co., L.P.,
   240 F. Supp. 2d 894 (N.D. Iowa 2003) ..................................................................... 12, 14

Myers v. Dolgencorp., Inc.,
   2006 U.S. Dist. LEXIS 6559 (D. Kan. 2006) ................................................................ 11

O'Reilly v. Rutgers, The State Univ. of New Jersey,
   2006 U.S. Dist. LEXIS 2341, (D.N.J. 2006) ............................................................ 11, 16

Shtab v. Greate Bay Hotel and Casino, Inc.,
   173 F. Supp. 2d 255 (D.N.J. 2001) ............................................................................... 11

**Other Authorities**

29 C.F.R. § 825.114 ................................................................................................................ 17

29 C.F.R. § 825.301(d) ........................................................................................................... 14

29 C.F.R. § 825.311 .......................................................................................................... 11, 16

29 C.F.R. § 825.312 .......................................................................................................... 11, 16

29 U.S.C. § 2613(b) .......................................................................................................... 11, 17

RLF1-3026439-1

I.    **NATURE AND STAGE OF PROCEEDINGS**

Plaintiff Hestal Lipscomb ("Lipscomb") filed her complaint (the "Complaint") against Defendant Electronic Data Systems Corporation ("EDS") on July 8, 2005.    Lipscomb's Complaint asserted claims for interference and retaliation under the Family Medical and Leave Act ("FMLA"), 28 U.S.C. § 26010, et seq. The parties have completed discovery and EDS now moves for summary judgment in its favor on all claims asserted against it as alleged in Lipscomb's Complaint. This is EDS' Opening Brief in support thereof.

II.    **SUMMARY OF ARGUMENT**

Lipscomb claims that she was entitled to leave under the FMLA and that her separation from EDS constituted interference with her FMLA rights and retaliation for exercising them. However, as set forth below, EDS is entitled to summary judgment in its favor and Lipscomb's claims should be dismissed with prejudice.

1.    Lipscomb was not entitled to FMLA leave because she failed to provide a medical certification substantiating her leave. There is simply no evidence from which a reasonable juror could conclude that Lipscomb actually submitted a medical certification. Although Lipscomb contends that her physician sent a document supporting her leave, it is undisputed she was informed on three separate occasions (after the document was allegedly sent) that it had not been received. Furthermore, the document Lipscomb claims she submitted does not contain any information or evidence indicating it was successfully sent to CIGNA. In addition, the document allegedly sent by Lipscomb's doctor does not contain the certification information required by the FMLA.

2.    EDS is also entitled to judgment in its favor with respect to Lipscomb's FMLA retaliation claim. The uncontroverted facts clearly show that EDS and CIGNA (EDS' FMLA

administrator) engaged in numerous, good-faith efforts to secure FMLA status for Lipscomb's leave. CIGNA provided Lipscomb with all required documents and forms to ensure her leave qualified for FMLA protection. In addition, Lipscomb's supervisor at EDS repeatedly contacted CIGNA to ascertain the status of Lipscomb's leave application. Furthermore, Lipscomb's supervisor met with her on multiple occasions to remind her of her obligations to submit FMLA documentation and to offer her assistance to Lipscomb in attaining FMLA status for her leave. Thus, it is plain that Lipscomb's termination had no causal link with her attempt to obtain FMLA leave.

## III.    FACTUAL BACKGROUND

### A.    Lipscomb's Initial Employment at EDS and Recurrent Tardiness and Attendance Issues

Lipscomb began her employment with EDS on July 29, 2002. (Lipscomb Dep., p. 25, relevant portions attached as Ex. A).[1] Lipscomb was employed as a Specialized Support Clerk who worked in the mailroom of EDS' Delaware Title XIX Account until she was separated on July 13, 2004. (Lipscomb Dep., p. 27; Ex. B. Screenshot summarizing Lipscomb's employment dates with EDS). EDS' Newark, Delaware facility processes all Title XIX Medicaid claims for the state of Delaware. (Lipscomb Dep., pp. 27-28).

As a mailroom Specialized Support Clerk, Lipscomb was responsible for opening and sorting the Account's daily mail, including Medicaid claim forms. (Lipscomb Dep., pp. 27-28). Lipscomb's duties also included processing the Medicaid claims, sorting them, and scanning them into the Account's claim adjudication system. (Id.). During her time at the Account, Lipscomb was supervised by Barbara Jackson, Deputy Account Manager, Tracey Eaddy, Claims

---

[1] All exhibits are attached to the Affidavit of Alyssa M. Schwartz filed contemporaneously herewith.

Supervisor, and Lance Rogers, Account Manager. (Id., pp. 26-28; Rogers Dep., pp. 7-8, attached as Exhibit C; Jackson Dep., pp. 15-17, attached as Ex. D).[2]

While employed at the Account, Lipscomb received a copy of the Account's employee handbook. (Delaware Account Handbook and Excerpts, attached as Ex. E; Lipscomb Dep., pp. 31-34). Lipscomb signed an acknowledgment stating she had received, read, and understood the handbook. (Acknowledgment from Account Handbook, attached as Ex. E). The employee handbook contains the Account's attendance policy. (Account Attendance Policy attached as Ex. E; Lipscomb Dep., pp. 31-33). The attendance policy requires employees who are absent for three or more days to provide a medical certification to validate the absences. (Ex. E).

The handbook explicitly states that "[e]excessive absenteeism may result in disciplinary action up to and including separation." (Id.). Lipscomb admits she was aware that being absent from EDS without a medical excuse could lead to discipline up to and including termination. (Lipscomb Dep., pp. 12-13, 33-34, 38, 79-80).

While at EDS, Lipscomb had no complaints about the company or its employees. (Lipscomb Dep., pp. 27, 30). She had a good working relationship with her supervisors and co-workers, and admits that Rogers, Jackson, and Eaddy were honest and fair. (Id., pp. 30-31). Furthermore, no one at EDS ever made any disparaging comments about her medical condition or her need to take time off work. (Id., p. 96).

During her two-year tenure at EDS, Lipscomb had absenteeism and tardiness problems. (See Lipscomb's 2003-2004 Attendance Log, Exs. F and G). These issues first surfaced in January 2003, and by February, Lipscomb had already been tardy three times for the year.

---

[2] Jackson was the Account's Claims Supervisor at the time of Lipscomb's separation. (Jackson Dep., p. 16).

(Ex. F). In response, Eaddy met with Lipscomb in February 2003 to discuss her tardiness issues and reminded her of the Account's attendance policy. (Id.; Lipscomb Dep., pp. 31-32). During the meeting, Eaddy told Lipscomb that she had kept a record of her tardiness, and informed her that she did not want Lipscomb to continue arriving late. (Id.). Apparently, however, Lipscomb chose to ignore Eaddy and arrived late four more times, took 12 vacation days, eight sick days, and left early six times. (Ex. F; Jackson Dep., p. 23).

Included among Lipscomb's numerous 2003 absences was the weeklong period from April 7 through April 13, 2003 during which Lipscomb took leave to undergo some type of unspecified surgery. (Ex. F; Lipscomb Dep., p. 37). Because she had not worked for EDS for a full year, Lipscomb's leave did not qualify for protection under the FMLA. Lipscomb received two letters from Synchrony dated April 10, 2003, informing her of her failure to qualify for FMLA leave or short-term disability ("STD") benefits. (April 10, 2003 Letters from Synchrony, attached as Ex. H). The FMLA letter explained that her leave was denied because she had not been employed by EDS for at least 12 months at the time of her leave. (Id.). Although the leave did not qualify for FMLA protection, her absence was excused under EDS' attendance policy because she had provided medical documentation to support her leave. (Jackson Decl. ¶¶ 3-4, attached as Ex. I). Indeed, Lipscomb was not separated because she had provided medical documentation corroborating her absence. (Id.).

### B.    Lipscomb's Tardiness and Attendance Issues Continue Into 2004

Although Lipscomb had been warned about her tardiness and absenteeism, these issues continued into 2004. By April 2004, Lipscomb had already been tardy four times during the year. (Ex. G). As a result, Eaddy gave Lipscomb a verbal warning on April 16, 2004, telling Lipscomb that if her tardiness issues continued, she would be placed on a written warning which could ultimately lead to her separation. (Id.; Eaddy Dep., pp. 62-63, attached as Ex. J).

4

Lipscomb did not dispute that she had been tardy and indicated that she understood the disciplinary consequences of continued violations of EDS' attendance policy. (Lipscomb Dep., pp. 31-33)

### C.     Lipscomb Is Absent From Work From April 29, 2004 Through May 15, 2004

On or about April 20, 2004, Lipscomb told her team leader, Linda Jackson, that she would be missing work due to an unspecified medical procedure. (Eaddy Dep., p. 29). Linda Jackson then relayed Lipscomb's leave request to Eaddy. (Id., pp. 28-29). Lipscomb refused to provide any other details regarding her forthcoming absence. (Lipscomb Dep., p. 41). After speaking with Lipscomb, Eaddy immediately contacted CIGNA, EDS' third-party administrator for its FMLA and STD plans, and began the process of qualifying Lipscomb's leave for STD benefits and/or FMLA protection.[3] (Jackson Dep., pp. 70-71; Eaddy Dep., pp. 19, 25, 28-29).

The day after she stated her intention to take leave, CIGNA sent Lipscomb a letter acknowledging her request for FMLA leave and informing her of her rights and obligations under the FMLA.[4] (See April 21, 2004 letter from CIGNA, attached as Ex. K). The letter stated that if her STD claim was not approved, Lipscomb would be provided with a separate Certification of Health Care Provider Statement to certify her leave under the FMLA. (Id.). The letter expressly informed Lipscomb that a final determination on the FMLA status of her leave would be based on the **Certification and medical information** provided by her attending physician. (Id.).

---

[3] CIGNA replaced Synchrony as EDS' third-party FMLA and STD benefits administrator in 2004.

[4] CIGNA sub-contracted a portion of its FMLA administration duties to an entity known as "SHPS," that was known to EDS employees as CIGNA Leave Solutions. There is absolutely no evidence that any documentation supporting Lipscomb's leave was ever sent to SHPS.

5

An EDS employee's obligation to submit all pertinent medical information to qualify for FMLA leave is reinforced by EDS' Employee Benefits Handbook, which is accessible to all EDS employees. (Employee Benefits Handbook, attached as Ex. L, p. 79). The Employee Benefits Handbook explicitly informs employees that it is their responsibility to furnish the necessary medical information to CIGNA. (Id.; Jackson Dep., p. 57). The handbook also refers employees to EDS' website to answer questions regarding benefits, including the FMLA. (Jackson Dep., pp. 57-58).

Acknowledging this responsibility, Lipscomb admits that it was **her responsibility,** rather than her physician's, to submit medical information to CIGNA to support her application for FMLA leave. (Lipscomb Dep., pp. 39-40, 51, 54). Lipscomb further understood that FMLA-covered absences were excused but that unexcused absences could lead to termination. (Lipscomb Dep., pp. 12-13, 33-34, 38, 79-80). Accordingly, Lipscomb was well versed in the consequences, both direct and indirect, of her failure to substantiate her absences.

On May 4, 2004, CIGNA sent a letter to Lipscomb confirming receipt of her claim for STD benefits and informing her that CIGNA must receive medical information to verify her claim. (May 4 CIGNA Letter, attached as Ex. M). The letter further stated that CIGNA was requesting information from Lipscomb's physician, but in the event it did not obtain such information, **she was ultimately responsible for providing CIGNA with medical documentation supporting her claim.** (Id.). The letter concluded by informing Lipscomb that she must provide any medical information supporting her STD claim by May 19, 2004. Despite her personal obligation to provide medical information supporting her leave, Lipscomb took no action in response to the May 4 CIGNA letter. (Lipscomb Dep., p. 54).

6

**D.    Lipscomb Returns From Leave, But Fails to Provide an FMLA Medical Certification Despite Repeated Reminders From CIGNA and EDS**

On May 17, 2004, Lipscomb returned to work with a note from her physician stating she was medically able to resume working. (Lipscomb Dep., pp. 74-75; May 17, 2004 return to work form, attached as Ex. N). The document does not provide the dates of, or reasons for, Lipscomb's absence. (Id.). Although at this point she had already received two letters reminding her of obligation to submit medical information, Lipscomb provided no documents substantiating her leave.

On May 20, 2004, CIGNA sent Lipscomb a letter informing her that her STD claim had not been approved and, as a result, her physician would have to complete the enclosed Certification of Health Care Provider for her leave to qualify for FMLA protection.[5] (May 20, 2004 letter from CIGNA, attached as Ex. O). The letter also stated that Lipscomb's failure to provide medical certification within **15 days** of the date of the letter may result in **denial** of FMLA protection. (Id.) (emphasis added). Thus, the May 20 letter explicitly informed Lipscomb of the consequences of not submitting her medical certification to CIGNA. Despite being informed of these consequences, Lipscomb took no action in response to CIGNA's letter.

CIGNA sent Lipscomb a letter dated June 2, 2004 informing her that it had not received any medical certification or medical documentation supporting her STD claim. (June 2, 2004 letter from CIGNA, attached as Ex. P). The letter stated that CIGNA had tried to contact Lipscomb by phone on May 27, 2004 and June 1, 2004, but had been unsuccessful. (Id.). The letter also stated that on May 27, 2004, CIGNA had asked Lipscomb's physician to provide it

---

[5] Because Lipscomb had failed to provide medical information supporting her STD claim, she was required, under EDS' FMLA policy, to submit an FMLA certification form to qualify her leave for FMLA protection. (Ex. O).

with medical information regarding her treatment, but as of the date of the letter, he had not responded. (Id.).

After receiving a copy of CIGNA's June 2 letter, Eaddy, who was concerned about the FMLA status of Lipscomb's leave, spoke with CIGNA to ascertain whether Lipscomb had submitted any information substantiating her leave request. (Ex. Q Termination Log). CIGNA informed Eaddy that it had not received any medical documentation from Lipscomb or her physician. (Id.; Rudeen Dep., pp. 37-38, 40-41, 44, Ex. R).

As of June 17, 2004, Lipscomb had received four letters from CIGNA emphasizing the need and importance of sending it her medical certification. Despite this correspondence and her obligation to provide documentation supporting her leave, CIGNA received nothing from Lipscomb. Accordingly, on June 17, 2004, CIGNA sent Lipscomb a letter informing her that her request for FMLA leave had been denied because it had not received a completed Medical Certification form from her physician. (June 17, 2004 letter from CIGNA, attached as Ex. S). The letter stated that Lipscomb had 15 days from the date of the letter to appeal the denial and send medical certification to CIGNA. (Id.). Once again, Lipscomb did not take any action as a result of this letter. (Lipscomb Dep., p. 73).

On June 30, 2004, Jackson called CIGNA and learned it had not received any medical information from Lipscomb. (Jackson Dep., pp. 37-39, 76-77; Jackson Decl. ¶ 5 ; Rudeen Dep., pp. 37-38, 40-41, 44). Accordingly, Jackson and Eaddy met with Lipscomb to remind her of her obligation to send medical documentation supporting her leave to CIGNA. (Jackson Dep., pp. 32-33, 37-39, 76-77, 81; Eaddy Dep., pp. 30-31; Lipscomb Dep., p. 76-77). During the meeting, Jackson told Lipscomb that she had to contact her physician immediately and instruct him to send the medical information to CIGNA. (Id.). Jackson also told Lipscomb to contact CIGNA

8

and tell it that she was in the process of obtaining medical information. (Id.; Jackson Decl. ¶ 9).

Ignoring Jackson's advice, Lipscomb refused to speak with anyone at CIGNA and did not submit

any medical information supporting her leave. (Jackson Dep., pp. 31-32, 81)

    The following day, July 1, 2004, Jackson again spoke with CIGNA (for the second time),

to see if Lipscomb had followed up regarding her FMLA claim. (Jackson Dep., pp. 32, 38-39,

76-80; Jackson Decl. ¶ 6; Rudeen Dep., pp. 37-38, 40-41, 44). After confirming that Lipscomb

still had not submitted a medical certification, Jackson spoke with Lipscomb (for the second

time) later that day to see if she had spoken with CIGNA or her physician. (Jackson Dep., pp.

32-33, 37-39, 76-77, 81; Eaddy Dep., p. 54; Lipscomb Dep., pp. 78-79). Jackson again

instructed Lipscomb to speak with CIGNA to ensure that it received her medical information.

(Jackson Dep., pp. 32-33, 37-39, 76-77, 81). Lipscomb responded that she had been unable to

reach her doctor. (Jackson Dep., pp. 76-77, 81). Jackson stressed the importance of providing

the medical documentation and even offered Lipscomb a conference room so her doctor could

fax the medical information directly to her, which she could then fax to CIGNA herself.

(Jackson Dep., pp. 77-79; Jackson Decl. ¶ 9). Lipscomb declined Jackson's offer and chose not

to use EDS' conference room or fax machine to obtain her medical certification. (Lipscomb

Dep., pp. 78-79; Jackson Dep., pp. 32, 80-81, 110).

    The next day, July 2, 2004, Jackson again spoke with CIGNA (for the third time) and

learned that it still had not received anything from Lipscomb or her physician. (Jackson Dep.,

p. 52; Jackson Decl. ¶ 7; Rudeen Dep., pp. 37-38, 40-41, 44). Jackson met with Lipscomb (for

the third time) on July 2, 2004 to see if she had followed up with CIGNA or submitted any

documentation. (Jackson Dep., pp. 32-33, 37-39, 77-79, 81, 111; Eaddy Dep., p. 54). Lipscomb

told Jackson that her physician had faxed the information to CIGNA at some unspecified time.

(Jackson Dep., p.77).   Because it was ultimately Lipscomb's responsibility to submit the certification to CIGNA, Jackson again reminded Lipscomb to follow up with CIGNA to ensure it had received the information from her physician.  (Id.; Jackson Decl. ¶ 9).  Jackson contacted CIGNA on July 5, 2004 (for the fourth time), and was again advised that it had not received anything from Lipscomb or her physician.  (Jackson Dep., pp. 78-79, 82; Jackson Decl. ¶ 10 Rudeen Dep., pp. 37-38, 40-41, 44).   At the conclusion of her third meeting with Jackson, Lipscomb stated that she had still been unable to contact her physician.  (Jackson Dep., p. 81).

### E.    Lipscomb Is Separated Based On Her Failure to Provide a Medical Certification Validating Her Purported FMLA Leave

On July 13, 2004, Jackson spoke with CIGNA (for the fifth time) and once again confirmed it had not received anything supporting Lipscomb's FMLA application.  (Jackson Dep., pp. 78-80; Jackson Decl. ¶11; Rudeen Dep., pp. 37-38, 40-41, 44).   As a result of Lipscomb's complete failure to provide any medical documentation, her 14 days of absence were considered unexcused under the Account's attendance policy.   Despite being sent five letters from CIGNA and meeting with Jackson three times, Lipscomb failed to provide any certification supporting her leave.  (Jackson Dep., pp. 32, 81).  Although EDS and CIGNA attempted to assist Lipscomb in securing FMLA leave, she simply failed to follow their direction and advice.

Because Lipscomb had made no effort to follow up with CIGNA or her physician, despite being counseled to do so on numerous occasions, Jackson and Rogers decided to separate Lipscomb for excessive unexcused absenteeism.  (Jackson Dep., pp. 12-13, 29, 32, 80-81).  At the July 13, 2004 separation meeting, Jackson reminded Lipscomb that she had asked her three different times to follow up with CIGNA and had also reminded Lipscomb that her failure to provide the certification meant that her absences were unexcused.  (Rogers Dep., pp. 48-49).  Lipscomb admitted she had been unsuccessful in having her physician submit the required

10

information to CIGNA. (Id.). At all times, the burden remained on Lipscomb to submit the medical certification to CIGNA. (Exs. K, L, M, O).

**IV.    LAW AND ARGUMENT**

**A.    Lipscomb Was Not Entitled to FMLA Leave Because She Failed to Submit a Medical Certification to CIGNA Despite Multiple Reminders From EDS and CIGNA**

Lipscomb's failure to submit a valid medical certification bars her FMLA interference claim. To establish a *prima facie* case of FMLA interference, Lipscomb has the burden of proving: 1) she was an eligible employee under the FMLA; 2) EDS was an employer subject to requirements of the FMLA; 3) she was entitled to FMLA leave; 4) she gave notice to EDS of her intention to take FMLA leave; and 5) EDS denied Lipscomb benefits to which she was entitled under the FMLA. O'Reilly v. Rutgers, The State Univ. of New Jersey, 2006 U.S. Dist. LEXIS 2341, at *10-11 (D.N.J. 2006). In addition, "to safeguard the interests of employers and prevent abuses by employees" an employer may require certification to validate an employee's leave request. Shtab v. Greate Bay Hotel and Casino, Inc., 173 F. Supp. 2d 255, 264 (D.N.J. 2001). If an employee fails to provide an FMLA certification, the leave does not qualify as FMLA leave. 29 C.F.R. §§ 825.311, 825.312. Thus, to qualify for FMLA protection, Lipscomb was required to submit a medical certification substantiating her leave. 29 U.S.C. § 2613(b).

When a certification is required, an employee has the burden of proving the medical certification was both **actually submitted and received**. Myers v. Dolgencorp., Inc., 2006 U.S. Dist. LEXIS 6559 (D. Kan. 2006) (denying employee's FMLA interference claim where she presented no independent corroborative evidence that medical certification was provided to employer); Geromanos v. Columbia Univ., 322 F. Supp. 2d 420, 433 (S.D.N.Y. 2004) (noting that it was impossible for court to infer employee's FMLA documents were faxed to employer where documents were not imprinted with a legend indicating they were, in fact, transmitted).

11

The employee's burden extends to calling the employer and/or benefits administrator to ensure actual receipt of FMLA documents. Junker v. Amana Co., L.P., 240 F. Supp. 2d 894, 901-02 (N.D. Iowa 2003) (granting employer summary judgment on employee's FMLA interference claim where employee failed to contact employer to confirm receipt of such documents).

The uncontroverted facts show that Lipscomb utterly failed to provide a valid medical certification. Rather than supporting her claim with a valid FMLA certification, it appears that Lipscomb's interference claim is premised on a one-page STD benefits cover sheet. (STD Benefits Cover Sheet attached as Ex. T). Lipscomb asserts that her medical provider faxed this document to CIGNA on June 21, 2004. (Lipscomb Dep., pp. 71, 86-87). Notably, Lipscomb admits she was not even aware of this document until September 2004, several months after her separation. (Ex. T; Lipscomb Dep., pp. 55-57). Nonetheless, the undisputed facts show that the form was never actually received by CIGNA. CIGNA representative Kim Rudeen testified that CIGNA never received this document. (Rudeen Dep. pp. 37-38, 40-41, 44).

In addition, the form, which was originally provided by CIGNA to Lipscomb, in connection with her inquiry regarding STD leave, contains no legend imprint showing that it was ever faxed to a CIGNA fax number.[6]  (Ex. T) See Geromanos v. Columbia Univ., 322 F. Supp. 2d 420, 433 (S.D.N.Y. 2004) (impossible for court to infer employee's FMLA documents were faxed to employer where documents were not imprinted with a legend confirming transmission). In addition, contrary to her FMLA responsibilities, Lipscomb never contacted CIGNA to verify that the certification was, in fact, received by CIGNA. (Lipscomb Dep., pp. 56-57, 70; Jackson Dep., pp. 31-32). Thus, the Court cannot infer that the medical certification was sent to CIGNA.

---

[6] It should be noted that the imprint contained on the form merely shows that it was faxed **from** CIGNA to Lipscomb's healthcare provider on May 7, 2004. (See Ex. W, May 7, 2004 fax from CIGNA) The May 7 imprint does nothing to support Lipscomb's assertion that the STD benefits form was faxed **to** CIGNA on June 21, 2004.

12

Moreover, the fax confirmation sheet actually verifies that the form was never successfully transmitted to CIGNA. (Fax Confirmation Sheet, Ex. U) Specifically, no "OK" designation appears next to the number 800-325-7016, the number to which Lipscomb claims the document was sent, on the confirmation sheet. (Ex. U). The lack of any "OK" confirmation unequivocally demonstrates that the STD benefits sheet was not successfully transmitted to CIGNA. While an "OK" designation appears next to another number, 800-377-4286, that number is not a valid CIGNA facsimile number (Andrade Decl. ¶¶ 4-5, Ex. V). Further, there is no evidence even linking the cover sheet to the STD benefits form. Indeed, the documents are separate and there are no markings showing any relation between the two. Rather than supporting her FMLA interference claim, the fax confirmation actually undermines it because it reinforces the conclusion the STD form was never successfully transmitted to CIGNA.[7]

Jackson spoke with CIGNA five times after the STD form was purportedly sent on June 21. (Jackson Dep., pp. 12-13, 32-33, 37-39, 77-81, 111; Jackson Decl. ¶ 12; Eaddy Dep., p. 54). Each time, CIGNA confirmed that it had not received any medical documentation supporting Lipscomb's FMLA leave. (Id.; Rudeen Dep., pp. 37-38, 40-41, 44). In addition, Jackson met with Lipscomb on three separate occasions after June 21 to inform her that CIGNA had not received anything supporting her leave, and to urge Lipscomb to obtain the medical certification needed by CIGNA and to send it to CIGNA herself. (Jackson Dep., pp. 32-33, 37-39, 76-79, 80-82, 111; Eaddy Dep., p. 54; Jackson Decl. ¶¶ 9, 13). Clearly, no reasonable juror could conclude that Jackson would have continued to meet with Lipscomb had either CIGNA or

---

[7] Through discovery the parties have learned that the facsimile number 800-325-7016, which appears on the form sent by CIGNA to Lipscomb, is not a valid CIGNA facsimile number, but is actually a transposition of 800-352-7016, which is a valid CIGNA facsimile number. This transposition, however, is immaterial because, as discussed above, there is no evidence that Lipscomb sent the CIGNA form to 800-325-7016 or any valid CIGNA facsimile number.

EDS received the certification. Indeed, to believe otherwise, one must believe that EDS and CIGNA actually received the certification and subsequently conspired to deprive Lipscomb of her FMLA rights. The absurdity of such a conclusion speaks for itself.

Moreover, even if the one-page form was – unbeknownst to Lipscomb or EDS – actually received by some fax number at CIGNA on June 21, 2004, this scarcely satisfied Lipscomb's personal burden of providing medical certification to EDS. Lipscomb ignored Jackson's instructions to contact CIGNA **herself**, and to send the medical certification to CIGNA **herself**, and she never even attempted to confirm that CIGNA had received any medical certification from her. (Lipscomb Dep., pp. 56-57, 70). In fact, at her termination meeting, Lipscomb never told Rogers or Jackson that she had sent any medical certification to CIGNA, because she was unaware of the June 21 form when she was terminated.[8] (Lipscomb Dep., pp. 82-85; Rogers Dep., pp. 48-49). Lipscomb's failure to follow Jackson's instructions and to ensure that CIGNA actually received her medical certification bars her FMLA claim. Junker v. Amana Co., L.P., 240 F. Supp. 2d 894, 901-02 (N.D. Iowa 2003) (prohibiting FMLA interference claim where employee failed to contact employer to confirm receipt of FMLA documents).

It is further undisputed that, pursuant to 29 C.F.R. § 825.301(d), CIGNA fully apprised Lipscomb of the direct consequences of her failure to provide medical certification substantiating her leave. CIGNA's May 20 letter expressly informed Lipscomb that failure to provide certification meant that her leave would not qualify for FMLA protection. (Ex. O). Thus, Lipscomb knew her leave would not be protected if she failed to submit her certification. Although Lipscomb was ultimately separated, her separation resulted from her violation of the

---

[8] Indeed, Lipscomb did not become aware of the STD form and fax confirmation sheet until September 2004—two months after her termination. (Lipscomb Dep., pp. 55-57).

14

Account's attendance policy rather than EDS' FMLA procedures. In <u>Brown v. SBC Communic'ns, Inc.</u>, 2005 U.S. Dist. LEXIS 41599, at *20-21 (E.D. Wis. 2005), the court explained the difference between the direct and indirect consequences of an employee's failure to provide an FMLA certification:

> Wisconsin Bell notified Brown that failure to submit the required certification for an absence would result in FMLA leave being denied. This was the anticipated consequence of Brown's failure to provide the proper medical certification. Although Brown's accumulated absences ultimately resulted in his suspension and termination, that consequence followed from Wisconsin Bell's attendance policy, not its FMLA procedures.

Lipscomb's April 2003 leave is a striking example of this difference. Although Lipscomb's April 2003 absence did not qualify for FMLA leave, she was not separated because, pursuant to the Account's attendance policy, she provided medical evidence of her absence. (Jackson Decl. ¶¶ 3-4). Conversely, Lipscomb was separated in 2004 because she failed to provide medical documentation excusing her excessive absences. (Lipscomb Dep., pp. 81-85; Jackson Dep., pp. 62-63).

Additionally, Lipscomb admits she was familiar with the Account's attendance policy and the fact that unexcused absences could lead to separation. (Lipscomb Dep., pp. 12-13, 33-34, 38, 79-80). In fact, Lipscomb clearly understood the linkage between non-FMLA absences and possible termination:

> Q:    And on the previous page there is a note, "The requirements of these guidelines exclude any qualifying Family Medical Leave Act, FMLA, absences or protected leave." Do you see that?
>
> A:    Yes.
>
> Q:    And you knew that absences covered by the FMLA were considered excused absences?
>
> A:    Yes.

15

Q:      And that unexcused absences could lead to discipline?

A:      Yes.

Q:      Including termination?

A:      Could you repeat that, please? I'm sorry.

Q:      Sure.  . . .  And you knew that unexcused absences could lead to discipline, including termination?

A:      Yes.

(Id., pp. 33-34).

The undisputed facts show that Lipscomb never submitted any medical certification to CIGNA as required by the terms of EDS' FMLA leave policy. (Exs. K, L, and U). Although EDS' FMLA policy explicitly placed the burden on Lipscomb to submit all information in support of her leave, not once did she contact CIGNA to verify its receipt of her certification. (Lipscomb Dep., pp. 56-57, 70). Rather, Lipscomb sat idly by and did nothing notwithstanding EDS' and CIGNA's repeated reminders regarding the importance of submitting her certification. (Id., pp. 54-57, 70, 73). By failing to submit a medical certification, Lipscomb's leave did not qualify for FMLA protection. 29 C.F.R. §§ 825.311, 825.312. Consequently, Lipscomb's interference claim fails as a matter of law because she cannot establish she was either entitled to FMLA leave or that EDS wrongly denied her FMLA benefits. O'Reilly v. Rutgers, The State Univ. of New Jersey, 2006 U.S. Dist. LEXIS 2341, at * 10-11 (D.N.J. 2006).

## B.    The STD Benefits Form Is Insufficient as a Matter of Law to Constitute a Valid FMLA Certification

Even assuming Lipscomb successfully sent the STD benefits form to CIGNA, this document is facially deficient and does not constitute a valid medical certification. A valid FMLA certification must contain: 1) the date on which the employee's serious health condition commenced; 2) the probable duration of the condition; 3) the appropriate medical facts within

16

the knowledge of the health care provider regarding the condition; and 4) a statement that the employee is unable to perform the functions of her position. 29 U.S.C. § 2613(b). Accordingly, on May 20, 2004, CIGNA sent Lipscomb an FMLA certification patterned after the FMLA regulations. (Ex. O). It is undisputed that this form was never sent to CIGNA. (Lipscomb Dep., pp. 71, 86-87). The STD benefits form relied on by Lipscomb does not contain any medical facts linking Lipscomb's medical condition to her leave of absence.

Rather, the document is conclusory and merely states that Lipscomb has granular cell tumors. This limited information does not provide CIGNA or EDS any medical facts or basis to determine that Lipscomb's granular cell tumors constituted a serious health condition under 29 C.F.R. § 825.114. Even Lipscomb admits that this document does not constitute an FMLA certification of healthcare provider. (Lipscomb Dep., p. 91). In addition, contrary to the instructions on the STD form, Lipscomb failed to provide any test results or office notes supporting her FMLA leave application. The CIGNA employee overseeing Lipscomb's STD claim, Kim Rudeen, testified that the form allegedly faxed on June 21 lacked sufficient information to support a claim for STD benefits under EDS' policy. (Rudeen Dep., p. 38).[9] Consequently, the medical certification is insufficient as a matter of law under 29 U.S.C. § 2613(b).

C.    **Lipscomb Has Produced No Evidence Supporting Her FMLA Retaliation Claim**

Lipscomb also has provided no evidence supporting her retaliation claim. Lipscomb's FMLA retaliation claim requires her to prove: 1) she availed herself of a protected right under the FMLA; 2) she suffered an adverse employment action; and 3) there was a causal connection

_____

[9] It should be noted that Rudeen did not see the STD benefits form (Ex. T) until her deposition. (Rudeen Dep., pp. 37, 44).

between her protected activity and the adverse employment action.  Collier v. Target Stores Corp., 2005 U.S. Dist. LEXIS 6262, at *14-15 (D. Del. 2005) (Robinson, J.).

In light of the undisputed facts showing that EDS and CIGNA engaged in multiple, good faith efforts to secure FMLA status for her leave, Lipscomb's retaliation claim is nothing short of ridiculous.  There is plainly no nexus between Lipscomb's termination and her seeking FMLA leave.  Id. (FMLA retaliation claim requires employee to prove connection between adverse action and FMLA leave).  First, CIGNA provided her with all relevant FMLA forms, documents, and information to ensure the leave was protected.  (See Exs. K, M, O, P, S).  Indeed, CIGNA sent Lipscomb five letters concerning the requirements and status of her FMLA leave.  (Id.)

Furthermore, Lipscomb's supervisor at EDS, Jackson, made every effort possible to ensure her leave qualified for FMLA protection.  Specifically, Lipscomb's supervisors at EDS contacted CIGNA no less than six times to see whether it had received medical certification from Lipscomb.  (Jackson Dep., pp. 32-33, 80-81, 111; Jackson Decl. ¶ 12; Eaddy Dep., p. 54; Ex. Q).  Jackson even met with Lipscomb on three separate occasions to inform her CIGNA had not received her medical certification and that she was required to submit it for her leave to attain FMLA status.  (Id.; Jackson Decl. ¶¶ 9, 13).  Contrasting Jackson's repeated efforts with Lipscomb's apparent apathy, it is clear that Jackson was more concerned with the FMLA status of Lipscomb's leave than even Lipscomb herself.  Additionally, Lipscomb admitted that no one at EDS interfered with her ability to submit medical documentation to CIGNA, and that, in fact, her supervisors and co-workers at EDS were very helpful in assisting her.  (Lipscomb Dep., pp. 99-100).  The undisputed facts show that Lipscomb was separated based on her own, voluntary failure to submit a medical certification, rather than any retaliatory conduct from EDS or CIGNA.

Moreover, Lipscomb was separated two months after returning from her leave. The two month delay, which resulted from EDS and CIGNA's multiple good-faith attempts to secure FMLA status for her leave, does not indicate the close temporal proximity necessary to support a retaliation claim. Cf. Jalil v. Avdel Corp., 873 F.2d 701, 703 (3d. Cir. 1989) (causal link demonstrated where adverse action occurred two days after employee engaged in protected activity).

Additionally, Lipscomb has produced no evidence of animus toward her attempt to secure FMLA leave. To the contrary, Lipscomb admits that everyone in her EDS leadership, including Jackson, Rogers and Eaddy, treated her fairly. (Lipscomb Dep., pp. 27, 30-31). In fact, Lipscomb said she had no complaints while working at EDS, and that no one at EDS ever made disparaging comments about either her medical condition or her taking time off work. (Id., p. 96). Lipscomb also admits that at the time of her separation, even she did not know whether CIGNA had received her medical certification. (Id., pp. 55-57)

EDS' lack of discriminatory animus is reinforced by the fact that in 2003, Lipscomb was not separated despite the fact she took leave which did not even qualify for protection under the FMLA. In April 2003, Synchrony denied Lipscomb's FMLA application because she had not been employed by EDS for at least 12 months at the time of her leave. (Ex. H). Nonetheless, Lipscomb's absence was excused, pursuant to the Account's attendance policy, because she had provided medical documentation to EDS and Synchrony to support her leave. (Jackson Decl. ¶¶ 3-4).

Nor does Lipscomb have any evidence that her failure to supply CIGNA with a medical certification was a pretext for FMLA retaliation. Lipscomb admits that her failure to supply medical documentation was the only reason for her separation and that she was not aware of **any**

EDS employee terminated for taking a medical leave. (Lipscomb Dep., p. 96). Lipscomb was terminated because she failed to provide the medical documentation she was repeatedly told to provide, not because EDS wanted to terminate an employee seeking to take FMLA leave. The conclusion is buttressed by the fact that Lipscomb previously had not been disciplined in any way for taking a leave that was **not** covered by the FMLA.

## V.    CONCLUSION

Lipscomb has no evidence that EDS sought to interfere with her rights under the FMLA or to retaliate against her in any way. In fact, it is difficult to see what more EDS could have done to help Lipscomb take FMLA leave. Lipscomb's supervisors set up an account for her claim for FMLA leave with CIGNA, which in turn sent her numerous letters reminding her of her rights and obligations under the FMLA and requested the medical documentation needed to process her FMLA claim. When Lipscomb failed to respond to any of these letters, Lipscomb's supervisor met with her on three separate occasions, reminding her of the urgency to submit medical documentation to CIGNA and urging her to contact CIGNA herself, rather than rely on her medical provider. Lipscomb never did this.

As Lipscomb admits, no one from EDS interfered with her ability to submit medical documentation to support her FMLA claim, and her supervisors and co-workers at EDS in fact helped her with her request for FMLA leave. Therefore, EDS is entitled to summary judgment on all the claims Lipscomb brings against it.

20

Of Counsel:
Thomas J. Piatak
Roger G. Trim
Baker & Hostetler LLP
3200 National City Center
1900 East Ninth Street
Cleveland, OH 44114-3485
Telephone: (216) 621-0200

Richard G. Elliott, Jr. (#687)
elliott@rlf.com
Alyssa M. Schwartz (#4351)
schwartz@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
Telephone: (302) 651-7700

Attorneys for Defendant
Electronic Data Systems Corporation

Dated: June 15, 2006

21

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2006, I electronically filed the foregoing with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following and which has also been served as noted:

### BY U.S. MAIL

Laurence V. Cronin
Smith Katzenstein & Furlow
The Corporate Plaza
800 Delaware Avenue
P. O. Box 410
Wilmington, Delaware 19899

Alyssa M. Schwartz (#4351)
schwartz@rlf.com