**Affidavit of Laurence V. Cronin**                    **Exhibit J**

CIGNA - Disability Claim by Fax or Mail



**CIGNA**
*A Business of Caring.*

Search
[_____] [go]

Home > Life, Accident, & Disability > Customer Service >
Disability Claim by Fax or Mail

**Return to CIGNA Home**

# How to file a disability claim

**Popular Links**

Apply for life, accident
and disability insurance

**Submit a Disability
Claim**

**Submit a Life and
Accident Claim**

**Customer Service**

Important Forms

1.  Choose the form you need:
    Short-term disability claim form* (PDF)
    Long-term disability claim form* (PDF)

2.  Print out the Physician's Statement* (PDF)

3.  Mail or fax both the completed and signed Disability Claim Form,
    the Physician's Statement, and any requested documentation, to:

    CIGNA Disability Management Solutions
    Paper Intake Team
    12225 Greenville Avenue #1000
    Dallas, Texas 75243

    Fax: 800.642.8553

**Have a question?**
Call 1.800.36.CIGNA(24462) and select option 4, between 8 a.m. and 5
p.m. Central Time. If you call outside this timeframe, please leave a
voicemail message and a representative will respond the next business
day.

*Requires Adobe® Acrobat® Reader 4.0 or above. Download here for access to
this free software.

© 2006 CIGNA
Legal Disclaimers | Link to Our Site | Privacy Information



EXHIBIT NO. 8

**Affidavit of Laurence V. Cronin**                    **Exhibit K**



# CHRISTIANA CARE
### HEALTH SERVICES

**Wilmington Hospital Health Center**

Date _5/10/04_

_Lipscomb, Kestal_ was seen in

at the Wilmington Hospital, _Surgical Clinic_

services on

May return to School/Work on _5/17/04_

Remarks: _May Return to work_
_ON Above day_

Any questions, please call 428 - _4413_

_[signature]_

16177 P (39371)(0898)

EDS II 00033

**Affidavit of Laurence V. Cronin**                    **Exhibit L**

**Pereira, Niki J**

| | |
|---|---|
| **From:** | Jackson, Barbara A |
| **Sent:** | Tuesday, July 13, 2004 4:57 PM |
| **To:** | Pereira, Niki J |
| **Cc:** | Eaddy, Tracey |
| **Subject:** | Termination of Hestal Lipscomb |

This is confirmation of our termination of Hestal Lipscomb effective 7/13/04 for the following reasons.
-unexcused absence for 14 days
6/2/04 - denial of STD was received for failure to provide documentation
6/17/04 - denial of FMLA was received due to certification not being received.

Please cancel her access to the building & she is not re-hirable.

BJ
**Barbara A. Jackson**
**Claims Operations Manager**
**EDS - DE Title XIX**
248 Chapman Rd. - Suite 100
Newark, DE 19702
phone: +01-302-454-7622 (ext. 139)
mailto:bjackson@eds.com

This e-mail, and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain privileged and/or confidential information. If you are not the intended recipient of this e-mail, any dissemination, distribution or copying of this e-mail, and any attachments thereto, is strictly prohibited. If you have received this e-mail in error, please immediately notify the sender by e-mail or telephone and permanently delete all copies of this e-mail and any attachments.

USTR - 05131882

ESS -

1

EDS II 00162

**Affidavit of Laurence V. Cronin**                                   **Exhibit M**

**CHRISTIANA CARE**
HEALTH SERVICES

☐ Christiana Hospital    ♿ Wilmington Hospital
4755 Ogletown-Stanton Rd.    501 W. 14th Street
Newark, DE 19718    Wilmington, DE 19801

Phone/... (302) 733-1900

Date: 4/9/03

R̥ #

Med. Allergies: _____

Circle Refills Limit 1 yr

NAME

ADDRESS

MRN

B.D.

LIPSCOMB     HESTAL

**REDACTED**

ONE RX PER BLANK

1
2   Please excuse Mr. Hestal Lipscomb
3   from work 4/4/03, and after this
4   so that she can undergo surgery.
5   pt may return to work 4/14

NO REFILLS FOR SCHEDULE II DRUGS
AW2401507 -
AT2887175 - GS0100    Benjamin Eskra, M.D.
Resident DEA ... - (SUFFIX)

DISPENSE AS WRITTEN

_B. Eskra_

SUBSTITUTION PERMITTED

(SIGNATURE)

EDS II 00034

**Affidavit of Laurence V. Cronin**                                    **Exhibit N**

**From:**       Rogers, Lance E
**Sent:**       Tuesday, July 13, 2004 4:54 PM
**To:**         Jackson, Barbara A
**Subject:**    Employee Separation Hestal Lipscomb 07/13/2004 Documentation

Barbara Jackson called Hestal into her office on 07/13/2004 at approximately 4:30 p.m. Barb opened the conversation by informing Hestal that she was being called in to terminate her employment with EDS. Hestal responded "Ok, may I ask why" Barb indicated that Hestal had 14 days of unexcused absences. Hestal seemed confused at how she could have so many days out. She indicated that she had been out for surgery but that she had sent out emails with this information. Barb explained that the surgery time had been denied and that the time for Hestal to provide documentation to Cigna had come and gone. In addition, the time for Hestal to appeal the denial had also come and gone. Barb collected Hestal's badge and Hestal left. I went to follow Hestal not wanting to leave her unaccompanied in the office. Hestal got maybe 30 feet down the hall and turned around to come back. Hestal asked me for documentation as to why she was being fired. I asked her to return to Barb's office where we could discuss it.

Hestal and I returned to Barb's office where I explained that Hestal was asking for documentation as to why she was being separated. Hestal proceeded to explain that she had called CIGNA and called the Doctor's offices seeking the required documentation. Barb confirmed with Hestal that Barb had requested that Hestal follow up and get the documentation on three different occasions. Hestal confirmed that for three days in a row Barb had requested and provided advice on how to get the documentation turned in and that she had been unsuccessful in securing the information. Hestal asked why we immediately jumped to termination. I discussed that we had discussed different options such as repayment, vacation time or termination and we felt that we were left with no choice but to terminate Hestal's employment as we had no documentation for her absences. Hestal again asked if we could provide something in writing for unemployment. Barb informed Hestal that unemployment would contact EDS directly and that they would know who to contact. Hestal said she understood, was visibly upset that something like a surgery had cost her job. I indicated to her that I too was sorry that the time for providing proof of her absences had passed.

I walked Hestal to the mailroom so she could pack her items. I left Hestal with Tracey Eaddy and returned to Barb.

*Lance Rogers*
EDS, Delaware Healthcare Services
248 Chapman Rd. Suite 100
Newark, DE 19702

☎ phone: +01-302-454-7622 x132
Fax: +01-302-454-9375
✉ mailto:lance.rogers@eds.com
Cell: 302-893-0180

*This e-mail, and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain privileged and/or confidential information. If you are not the intended recipient of this e-mail, any dissemination, distribution or copying of this e-mail, and any attachments thereto, is strictly prohibited. If you have received this e-mail in error, please immediately notify the sender by e-mail or telephone and permanently delete all copies of this e-mail and any attachments.*

EDS II 00255

**Affidavit of Laurence V. Cronin**                    **Exhibit O**

Wilmington Health Care Center
501 W. 14th Street
Wilmington, DE 19801
FAX: 302 428-6403
Phone: 302 428-6496

# CHRISTIANA CARE
# HEALTH SERVICES

From (office of): _Surgical Surgery_

## CONFIDENTIAL

To: _____
Fax: _454 - 1074_
Phone: _____

Date: _4/19/04_
No. of Pages: _1_ + cover

From:  ☐ Sheila Mathis, RN
       ☐ Alberta Lockhart, MA
       ☑ Shazi Zodeh, RN
       ☐ Donna McNee, RN
       ☐ _____

Re: _Lipscomb, Hestal_

Message: _____
_____
_____
_____


DEPOSITION
EXHIBIT
Lipscomb E
2/2/06  asa

To whom it may concern:                              04/19/04

Ms. Hestal Lipscomb has been scheduled for outpatient surgery on

4/29/04 at Wilmington hospital. Please contact Surgical Services @ 428-

4413 if any question.

Chief Surgical Resident

Jonathan Kraut, MD

**Surgical**

# MESSAGE CONFIRMATION

04/19/2004  15:05
ID=MARY BETHS OFFICE 4284627

| DATE | S,R-TIME | DISTANT STATION ID | MODE | PAGES | RESULT | |
|------|----------|--------------------|------|-------|--------|--|
| 04/19 | 00'28" | 84541074 | CALLING | 02 | OK | 0000 |

9/2004    15:04    MARY BETHS OFFICE 4284627 → 84541074                    NO.412    D01

**Affidavit of Laurence V. Cronin**                              **Exhibit P**

 **CIGNA Group Insurance**
Life · Accident · Disability


DEPOSITION
EXHIBIT
*Lipscomb G*
PENGAD 800-631-6989

April 21, 2004

HESTAL LIPSCOMB
3111 W 2ND STREET 1ST FLOOR
WILMINGTON, DE 19805

Re: Acknowledgement of FMLA Leave Request and Notification of Rights and Responsibilities

Dear HESTAL LIPSCOMB:

This letter is to acknowledge receipt of your request on 04/20/2004 for leave beginning 04/28/2004 under your company's Family and Medical Leave Act ("FMLA") policy, due to a serious health condition that makes you unable to perform the essential functions of your job.

Enclosed you will find information on your rights under the Family and Medical Leave Act of 1993 (FMLA). Your leave has been preliminarily designated as FMLA, and in accordance with the Company's policy, you will not be required to submit separate FMLA medical certification providing your claim for short-term disability benefits and/or workers' compensation claim under your company's plan is approved.

If for any reason your short-term disability or workers' compensation claim is not approved, we will provide you with a Certification of Health Care Provider Statement to be completed by you and the attending Health Care Provider to certify your leave under FMLA. A final determination will be based on the medical information outlined by the attending Health Care Provider.

We are advised by your company that during an unpaid period of FMLA leave, you will be required to pay your normal portion of employee contributions for your health and welfare plans. Refer to the enclosed "Impact on EDS Benefits" for customer service telephone numbers and more information about your benefits while on an LOA.

If you have any questions or if the circumstances or dates of your leave change, please call us immediately at the toll free number listed above. You should also immediately inform your manager of any change to your leave status.

Sincerely,

CIGNA Leave Solutions

Enclosures:     Impact of FMLA on EDS Benefits
                Fitness for Duty Certification
                Your Rights under the Family and Medical Leave Act of 1993

CIGNA Leave Solutions℠ services are provided by Life Insurance Company of North America ("LINA") on behalf of your employer. These services are not insurance products. CIGNA, CIGNA Group Insurance and CIGNA Leave Solutions are registered trademarks licensed for use by subsidiaries of CIGNA Corporation. They are used here to refer to LINA. These services are provided by LINA and not by CIGNA.

EDS I 00124



## Impact of FMLA on EDS Benefits

If a leave of absence (LOA) is granted to you under the Family and Medical Leave Act (FMLA) of 1993 because of a qualifying event, then your EDS-provided benefits will be impacted as follows:

### UnPaid FMLA Leave of Absence (LOA)

| EDS-provided benefit | Impact of FMLA |
|---|---|
| Health Insurance Dental Insurance Life Insurance Personal Accident Insurance (PAI) | To continue coverage while on an unpaid FMLA LOA, you must continue paying your portion of the premiums. The premiums must be paid on an after-tax basis. EDS will bill you monthly for premiums due. If you fail to pay your portion of the premiums while on leave, your coverage will cease retroactive to the date for which contributions were paid. Benefits will be reinstated upon your return to active status. If you separate from EDS before returning from your leave, you will be eligible to elect Consolidated Omnibus Budget Reconciliation Act (COBRA) coverage. The start date of an unpaid leave is considered a change in family status for purposes of the Flexible Benefits Plan. You are entitled to continue, reduce, or discontinue your current benefit elections during the first 31 days of the leave by completing *Benefits Continuation Enrollment/Change Form for Employees on a Leave of Absence*. Upon returning from a leave during the same calendar year, flexible benefits in effect before the leave will resume unless a qualified family-related event (for example, birth) has occurred during the leave and you elected to change your coverage. Remember that you must make changes related to a qualified event within 31 days of the event. Please contact EDS Benefits Services Centre at (877) 337-2273 for forms and/or further assistance. If you return from the leave in a subsequent calendar year, you must elect your flexible benefits options within 31 days of your return. You may enroll for benefits under the same rules as the annual enrollment. If no elections are made, benefits will remain as elected in the previous plan year. If the previously elected benefits are not longer available, you will receive the medium plan if you live in a non-coordinated choice area or Plan B if you live in a coordinated choice area. Please contact EDS Benefit Services Centre at (877) 337-2273 for further assistance. |
| Dependant Care Account | Contributions to your dependant care account cease until you return from the LOA. You may continue to submit vouchers until March 31 of the following calendar year for eligible dependant care expenses incurred before the LOA. Please contact the Dependant Care Account Carrier at (800) 678-6684 for further assistance. |
| Health Care Account | Contributions may continue on an after-tax basis. EDS will bill you monthly for premiums due. If you choose not to continue participation or fail to pay the monthly contribution while on an LOA, you must wait until the next calendar year to participate. Through March 31 of the following calendar year, you can still receive reimbursement for eligible health care expenses incurred before the date you ceased contributions. Your participation is subject to the terms of the health care Reimbursement Plan. Remember, if monies are left in your account at the end of the plan year, they will not be reimbursed. Please contact the Health Care Account Carrier at (800) 678-6684 for further assistance. |
| Deferred Compensation Plan 401(K) Plan | Contributions cease until you return from the LOA. If you have any outstanding loans, you are required to continue making payments. Failure to make on-going payments while on an LOA will also result in a default of the entire loan balance three calendar months from the date of the first missed payment. If you default on your loan(s), the IRS requires that the outstanding loan balance be reported as taxable income to you. Please contact the EDS Benefit Services Centre at (877) 337-2273 for further assistance or to make arrangements for continuing payments. |
| Stock Purchase Plan | Contributions cease until you return from the LOA. Please contact Salomon Smith Barney at (800) 209-9995 for further assistance. |
| Retirement Plan | Eligibility, vesting, and benefit accrual service continue to accrue under the plan while on an FMLA LOA. Please contact EDS Benefit Services Centre at (877) 337-2273 for further assistance. |



# Impact of FMLA on EDS Benefits

## Paid FMLA Leave of Absence (LOA)

| EDS-provided benefit | Impact of FMLA |
|---|---|
| All EDS paid benefits All employee paid benefits | If a paid FMLA leave of absence is granted, all EDS and employee-paid benefits continue through payroll deductions. You may change your flexible benefits coverage only if a qualified family-related event (for example, birth) has occurred during the leave. Remember that you must make flexible benefits changes within 31 days of the qualified family-related event, and the change in coverage is retroactive to the date of the event. The difference in premiums is also retroactive to the date of the event. Each flexible benefits option has restrictions and limitations on the coverage changes you can make. For example, with any qualified family-related events, you can change your coverage (add or cancel dependents) for medical coverage but you cannot change your option level (for example, change from the high plan to the medium plan). You can switch to HMO coverage only if you move from an area where no HMOs were offered to an area where they are offered. In addition, if you return from the leave in a subsequent calendar year, you must elect your flexible benefits option within 31 days of return. You may enroll for benefits under the same rules as the annual enrollment. If no elections are made, benefits will remain as elected in the previous pan year. If the previously elected benefits are no longer available, you will receive the medium plan if you live in a non-coordinated choice area or Plan B if you live in a coordinated choice area. Please contact EDS Benefit Services Centre at (877) 337-2273 for further assistance. |

**NOTE:**
If you exceed your 12-week FMLA entitlement or if your LOA ceases to qualify under FMLA, other EDS LOAs may apply. For further information about your benefits, consult your *Employee Benefits Handbook*. Actual benefits available through each plan will always be determined and governed by the provisions of the legal documents controlling these plans.

EDS I 00126

## Fitness for Duty Certification

Please have this Fitness for Duty Certification form completed by your Health Care Provider and submitted to your Manager upon your return to work.

**Employee Name: (Please Print)** _____

**SS#:** _____  **Date Leave Started:** _____

I understand that I cannot return to work without a release from my health care provider.

_____                    _____
**Employee Signature**                                             **Date**

**Medical Provider's Statement**

I have examined the employee named above and certify that this person is medically able to resume working on _____ (Date).

This employee can return to work:    With No Restrictions
                                     With Restrictions (outline details below)

If the employee is returning with restrictions, please state in detail the employee's restrictions and the duration of these restrictions.

_____
_____
_____
_____
_____

_____                    _____
**Signature of Health Care Provider**                              **Date**

_____
**Name of Health Care Provider (Please Print)**

EDS I 00127

**Affidavit of Laurence V. Cronin**                    **Exhibit Q**

Linda Jackson

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

HESTAL LIPSCOMB,                    )
                                    )
        Plaintiff,                  )
                                    )
v.                                  )    Civil Action No.
                                    )       05-477 SLR
ELECTRONIC DATA SYSTEMS             )
CORPORATION, a Delaware             )
Corporation,                        )
                                    )
        Defendant.                  )

        Deposition of LINDA JACKSON taken pursuant to
notice at the offices of Smith, Katzenstein & Furlow LLP,
800 Delaware Avenue, 7th Floor, Wilmington, Delaware,
beginning at 2:25 p.m. on Wednesday, April 12, 2006,
before Robert Wayne Wilcox, Jr., Court Reporter and
Notary Public.

APPEARANCES:

        LAURENCE V. CRONIN, ESQ.
        SMITH, KATZENSTEIN & FURLOW LLP
          800 Delaware Avenue - 7th Floor
          Wilmington, Delaware  19801
          for the Plaintiff,

        THOMAS J. PIATAK, ESQ.
        BAKER HOSTETLER
          3200 National City Center
          1900 East 9th Street
          Cleveland, Ohio  44114
          for the Defendant.


                CORBETT & WILCOX
          Registered Professional Reporters
    1400 French Street     Wilmington, DE 19801
                (302) 571-0510
            www.corbettreporting.com

Linda Jackson

5 (Pages 14 to 17)

---

**Page 14**

1  if somebody is out on more than three separate occasions?
2      A.  It's under Absences.
3      Q.  Okay.  Is this on EDS 17?
4      A.  Yes.
5      Q.  All right.  Are you referring to the Absences
6  policy where it says if an employee is absent for three
7  or more days consecutively due to a medical reason?
8      A.  That's it.
9      Q.  Is that what you're referring to?
10     A.  Yes.
11     Q.  Okay.  So it's not three separate occasions.
12 It's three or more days?
13     A.  Yes.
14     Q.  Okay.  Are you aware of any other notes that
15 are required of EDS employees either before they go out
16 for sickness reasons or when they return from sickness
17 leave?
18     A.  If they go out on leave?
19     Q.  Yeah.
20     A.  When they go out on leave, there's a procedure
21 that the request is made to, I guess, the leave
22 administrator, the person who handles -- or the company
23 that handles the leave.  And when you come -- when you
24 return from your leave, there's documentation that needs

---

**Page 15**

1  to be returned from your doctor releasing you to come
2  back to work.
3      Q.  Okay.  But that's what we talked about as the
4  first line in that policy under Absences.  Correct?  A
5  note indicating that somebody is released to return to
6  work?
7      A.  Yes.
8      Q.  Okay.  Are you aware of any other documents
9  that are required of EDS employees from their physicians
10 when they return from sick leave?
11     A.  Can you rephrase the question?
12         MR. CRONIN:  Could you read it back,
13 please?
14         (The reporter read the requested
15 portion.)
16         THE WITNESS:  No.
17 BY MR. CRONIN:
18     Q.  Okay.  In 2004, did EDS use an outside
19 company, a vendor, in connection with short-term
20 disability and FMLA?
21     A.  Yes.
22     Q.  Who did they use?
23     A.  I'm not sure of the name.
24     Q.  Okay.  Were you aware that from 2003 to 2004

---

**Page 16**

1  that the companies changed performing that function for
2  EDS?
3      A.  Yes.
4      Q.  Okay.  Do you know if anything was explained
5  by the company to the employees about how the benefits or
6  application for benefits would be handled or if there
7  would be any changes in procedure?
8      A.  I don't recall.
9      Q.  Okay.  When Ms. Lipscomb was terminated, did
10 anybody explain to you why she was terminated?
11     A.  I spoke to my manager, Barb Jackson.
12     Q.  When did you speak to Barbara Jackson?
13     A.  When she was -- when Ms. Lipscomb was
14 terminated.
15     Q.  Okay.  Why did you go speak to her?
16     A.  I wanted to know what happened.
17     Q.  Why did you want to know?
18     A.  I guess I did it because I did not know.
19     Q.  Okay.  What did she tell you?
20     A.  They didn't receive paperwork -- return --
21 paperwork for her to return to work.  Something of that
22 nature.
23     Q.  Okay.  Did that explanation make sense to you?
24     A.  Yes.

---

**Page 17**

1      Q.  Did you have any reason to doubt that
2  explanation?
3      A.  No.
4      Q.  Did you ever talk to Ms. Lipscomb after she
5  was terminated?
6      A.  Yes.
7      Q.  When did you talk to her?
8      A.  I don't know the exact date.
9      Q.  What did you discuss?
10     A.  Just general stuff about how she was doing, if
11 she had found another job.
12     Q.  Was Ms. Lipscomb a good employee when she
13 worked for you?
14     A.  Yes.
15     Q.  Did you have any problems with her?
16     A.  Just some attendance and tardiness.
17     Q.  Were you involved in giving her a warning
18 about her tardiness?
19     A.  Yes.
20     Q.  Tell me about that.
21         When did that occur?
22     A.  I don't know the exact date.
23     Q.  Who participated?  You and Tracey Eaddy?
24     A.  Yes.

---