**Affidavit of Laurence V. Cronin**                    **Exhibit V**



**Friday**
**January 6, 1995**

## Part II

# Department of Labor

Wage and Hour Division

**29 CFR Part 825**
**The Family and Medical Leave Act of**
**1993; Final Rule**

**DEPARTMENT OF LABOR**

**Wage and Hour Division**

**29 CFR Part 825**

**RIN 1215–AA85**

**The Family and Medical Leave Act of 1993**

**AGENCY:** Wage and Hour Division, Labor.

**ACTION:** Final rule.

**SUMMARY:** This document provides the text of final regulations implementing the Family and Medical Leave Act of 1993, Public Law 103–3, 107 Stat. 6 (29 U.S.C. 2601 et seq.) (FMLA or Act). FMLA generally requires private sector employers of 50 or more employees, and public agencies, to provide up to 12 workweeks of unpaid, job-protected leave to eligible employees for certain specified family and medical reasons; to maintain eligible employees' pre-existing group health insurance coverage during periods of FMLA leave; and to restore eligible employees to their same or an equivalent position at the conclusion of their FMLA leave.

**EFFECTIVE DATE:** These rules are effective on February 6, 1995.

**FOR FURTHER INFORMATION CONTACT:** J. Dean Speer, Director, Division of Policy and Analysis, Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor, Room S–3506, 200 Constitution Avenue, NW., Washington, DC 20210; telephone (202) 219–8412. This is not a toll-free number.

**SUPPLEMENTARY INFORMATION:**

**I. Paperwork Reduction Act**

Recordkeeping requirements contained in these regulations (§ 825.500) have been reviewed and approved for use through July 1996 by the Office of Management and Budget (OMB) and assigned OMB control number 1215–0181 under the Paperwork Reduction Act of 1980 (Pub. L. 96–511). No substantive changes have been made in this final rule which affect the recordkeeping requirements and estimated burdens previously reviewed and approved under OMB control number 1215–0181. Comments received regarding the estimate of public reporting burden for the information collection requirements contained in these regulations are discussed below in connection with § 825.500.

**II. Background**

The FMLA was enacted on February 5, 1993. In general, FMLA entitles an "eligible employee" to take up to a total of 12 workweeks of unpaid leave during any 12-month period for the birth of a child and to care for such child, for the placement of a child for adoption or foster care, to care for a spouse or an immediate family member with a serious health condition, or when he or she is unable to work because of a serious health condition. Employers covered by the law are required to maintain any pre-existing group health coverage during the leave period and, once the leave period is concluded, to reinstate the employee to the same or an equivalent job with equivalent employment benefits, pay, and other terms and conditions of employment.

Title I of the Act applies to private sector employers of 50 or more employees, public agencies, and certain Federal employers and entities, such as the U.S. Postal Service and Postal Rate Commission. These regulations, 29 CFR Part 825, implement Title I of the FMLA. Similar leave entitlement provisions in Title II of the FMLA apply to most other Federal civil service employees who are covered by the annual and sick leave system established under 5 U.S.C. Chapter 63, plus certain employees covered by other Federal leave systems. The U.S. Office of Personnel Management (OPM) administers the regulations implementing Title II of the FMLA (see 5 CFR Part 630). Title III established a temporary "Commission on Leave," which is to conduct a comprehensive study and produce a report on existing and proposed policies on leave and the costs, benefits, and impact on productivity of such policies. Title IV contains miscellaneous provisions, including rules governing the effect of the Act on more generous leave policies, other laws, and existing employment benefits. Title V extended similar leave provisions to certain employees of the U.S. Senate and the U.S. House of Representatives.

Section 404 of the Act required the Department of Labor to issue regulations to implement Title I and Title IV of FMLA within 120 days of enactment, or by June 5, 1993, with an effective date of August 5, 1993. Title I of FMLA became effective on August 5, 1993, except where a collective bargaining agreement (CBA) was in effect on that date, in which case the provisions took effect on the date the CBA terminated or on February 5, 1994, whichever date occurred earlier.

To obtain public input and assist in the development of FMLA's implementing regulations, the Department published a notice of proposed rulemaking in the **Federal Register** on March 10, 1993 (58 FR 13394), inviting comments until March 31, 1993, on a variety of questions and issues. A total of 393 comments were received in response to the notice—from employers, trade and professional associations, advocacy organizations, labor unions, State and local governments, law firms and employee benefit firms, academic institutions, financial institutions, medical institutions, governments, Members of Congress, and others.

After consideration of the comments received, the Department issued an interim final rule on June 4, 1993 (58 FR 31794), which went into effect on August 5, 1993, and which invited further public comment on FMLA's implementing rules until September 3, 1993. On August 30, 1993, the Department further extended the public comment period until December 3, 1993 (58 FR 45433). The Department received more than 900 comments on the interim final rules during the extended comment period from advocacy groups and associations, Members of Congress, employers, union organizations, governmental entities and associations, law firms, management consultants, marriage and family counselors and therapists, social service workers, property management companies, temporary help and employee leasing companies, professional and trade associations, universities, and individuals. In addition to the substantive comments discussed below, many commenters submitted minor editorial suggestions, some of which were adopted and some were not. Finally, a number of other minor editorial changes have been made to better organize and simplify the regulatory text.

On December 29, 1994, a meeting was held at OMB with representatives of Consolidated Edison Company of New York pursuant to E.O. 12866.

The Department would like to point out that it has prepared a lengthy preamble to accompany these regulations in an attempt to be fully responsive to the numerous comments received. The Department would welcome additional comments regarding employers' experience with the implementation of the FMLA over the course of the next year or so. Such comments will be reviewed together with the results of the comprehensive study on existing and proposed leave policies to be conducted by the Commission on Leave to determine whether further revisions to these regulations will be appropriate in the future.

from returning to work quickly by accepting a "light duty" or different assignment. Accordingly, the final rule is revised to allow for an employee's voluntary and uncoerced acceptance of a "light duty" assignment. An employee's right to restoration to the same or an equivalent position would continue until 12 weeks have passed, including all periods of FMLA leave and the "light duty" period. In this connection, see also § 825.702(d).

With respect to early-out windows for retirement purposes, an employee on FMLA leave may be required to give up his or her remaining FMLA leave entitlement to take an early-out offer from the employer. Under these circumstances, FMLA rights would cease because the employment relationship ceases, and the employee would not otherwise have continued employment. Further, although an employer need not extend the window for those employees who are out on FMLA leave, the employer must afford such employees the opportunity to avail themselves of any such offer which would have been available if they had not been on leave.

Florida Citrus Mutual and Fisher & Phillips took issue with the prohibition against an employer manipulating the size of the workforce for the purpose of precluding employee eligibility for FMLA leave. They suggested that employers cannot "interfere" with the rights of employees unless and until the employees have those rights. We disagree with the views expressed in these comments. It is DOL's view that a *covered* employer that engages in the manipulative behavior prohibited by the regulatory provisions is depriving employees of rights and entitlements they would otherwise fully enjoy *but for* the manipulative actions by the covered employer, which is expressly prohibited. The rule is clarified to state that employers *covered by the FMLA* may not engage in such manipulation of the workforce for the purpose of avoiding FMLA obligations.

The California Department of Fair Employment and Housing recommended revisions to paragraph (c) of this section to reference the consequences of an employer asking a job applicant or the former employer of a job applicant questions which would reveal the employee's use of FMLA leave, and the consequences of making hiring decisions based on the use of FMLA leave. It was suggested that if hiring decisions are among the employment actions for which use of FMLA leave may not be a negative factor, then the regulations should incorporate guidance in this area. A

reference to "prospective employees" has been included in paragraph (c) of this section.

### III. Subpart C, §§ 825.300–825.312

Posting Requirements (§ 825.300)

Twenty commenters took exception to the regulatory requirement regarding the size of the notice (poster). They felt it was unnecessary and did not provide any substantive benefit to employees.

The Department has determined that it will not prescribe the size of the required poster. The regulation requires instead that the poster be large enough to be easily read. This requirement would be satisfied, for example, if the poster were at least the size of a standard 8½x11 inch piece of paper. The purpose of the poster is to call employees' attention to the basic requirements of FMLA and provide information where they may get additional information or file a complaint. In the past several years a number of commercial firms have reproduced other posters, having a number of posters in a single set or on a single display, and much of the information is not legible from any reasonable distance. If the poster does not inform, it serves no useful purpose.

Two commenters objected to having a provision in the regulation that allowed employees to circumvent their notice obligations to the employer if the employer failed to post the notice. The purpose of this provision is to encourage employers to post the notice; otherwise, how would employees know about FMLA and their basic rights and where to obtain additional information? The posting requirement is not difficult or overly burdensome for an employer, as the Department will furnish, free of charge, a copy of the poster which the employer may duplicate. The Department finds no basis to remove this provision from the Final Rule.

The Employers Association of Western Massachusetts, Inc., commented that references to applicants for employment should be deleted from the regulation as the statute applies only to eligible employees.

The statute, at § 109(a), requires the notice to be posted in conspicuous places on the premises where notices to employees and *applicants for employment* are customarily posted. The prohibited acts identified by the statute in § 105 state that it is unlawful for an employer and/or any person to interfere with rights or discriminate *against any individual*. Clearly the prohibited acts are not limited in application to eligible employees. The Department is unable to make this

change as it conflicts with the statutory language.

The Society for Human Resources Management asked if a contractor who has employees working at multiple sites of other employers is required to post the notice at each site when the employer who controls the site has already posted the notice. The contractor should ensure that a notice is posted in a conspicuous place on the worksite where his/her employees have access. If so, there is no need for the contractor to post additional notices.

The Tennessee Association of Business asked if posting the notice satisfies all notice requirements of the Act. The posting of the notice is but one of the notice requirements applicable to employers. For example, in § 825.301(b) the employer is required to provide written notice to an employee who provides notice of the need for FMLA leave regarding eight essential elements of information that are employee-specific. There are a number of other notice provisions throughout the regulations.

Other Employer Notices (§ 825.301)

Four commenters made observations regarding the requirements of § 825.301(a) for employers to include their policies regarding the taking of FMLA leave in employee handbooks, if they have such a publication. One commenter asked for the deadline by which the FMLA provisions should be included. Another objected to any requirement to include the process to file a complaint and advising employees of their right to file suit. Yet another urged the Department to provide an acceptable statement to be included in the employee handbook regarding FMLA. One commenter urged that this requirement be satisfied if the employer incorporated the Department's FMLA Fact Sheet in the handbook.

It was the intent of the regulations that if an employer provides a handbook of employer policies, the employer's FMLA policies would be included in the handbook by the effective date of FMLA. There is no requirement that an employer include information regarding filing complaints or private rights of action. The purpose of this provision is to provide employees the opportunity to learn from their employers of the manner in which that employer intends to implement FMLA and what company policies and procedures are applicable so that employees may make FMLA plans fully aware of their rights and obligations. It was anticipated that to some large degree these policies would be peculiar to that employer. Consequently, it would be of little use

to incorporate the Department's Fact Sheet or a Departmental statement in the employer's handbook for employees.

Seven commenters stated that the notice requirements in § 825.301(c) are burdensome, not required by the statute and should be deleted from the regulations. One commenter urged that the notice required by this section should include the consequences of employees failing to give 30 days notice when leave is foreseeable. Three additional commenters urged there be one generic notice applicable to all employees except key employees.

The intent of this notice requirement is to insure employees receive the information necessary to enable them to take FMLA leave. The employee is entitled to know the arrangements for payment of health insurance premiums reached by agreement with the employer, whether the employee will be required to provide medical certification for leave or fitness to return to duty, *etc.* It would be inappropriate to use a generic notice as much of the information may be employee specific, particularly the arrangements for payment of insurance co-payments. The regulation suggests employers provide information to employees regarding consequences of inaction. There is nothing in the regulation that precludes the employer from providing more information than required, only from providing less. The Department finds no basis to change the requirements of this notice provision.

Three commenters objected to a requirement that a notice be provided each time an employee takes leave, especially when the employee is taking leave intermittently.

The regulation has been amended to provide that in most circumstances notice need only be given once in each six- month period, on the occasion of the first employee notice of the need for leave. However, if the specific information required to be furnished in the notice changes, notice of the changed information must be provided in response to a subsequent notice of need for leave. In addition, an employer will be required to give notice of a requirement for medical certification, or for a "fitness-for-duty" report upon the employee's return to work, each time the employer receives notice of a need for FMLA-qualifying leave. An exception will exist, however, if the notice given at the beginning of the six-month period, as well as any employee handbooks or other written documents regarding the employee's leave policies, make it clear that medical certification or a "fitness-for-duty" report will be required under the circumstances of the

employee's leave. For example, the prior notice and handbook (if any) might state that certification will be required for all sick leave of any kind, for all unpaid sick leave, or for all sick leave longer than a specified period. Similarly, the notice and handbook might state that "fitness-for-duty" reports will be required for all employees with back injuries in a certain occupation.

The Women Employed Institute urged that the notice required by § 825.301(c) be in writing and that the notice should be furnished to the employee no later than the day before leave is to begin if leave is foreseeable or as soon as practicable if not foreseeable.

The regulation has been changed to make it clear that the notice must be in writing. The interim final rule required the employer to provide the notice *at the time notice of need for leave is provided.* The Final Rule will require such notice to be provided as soon after notice of need for leave is given as practicable, usually one or two business days. The requirement for written notice simply ensures that the employee receives critical information and provides appropriate documentation of the information conveyed to the employee in the event of a dispute.

The Church of Jesus Christ of Latter-Day Saints commented that an employer should still be permitted to count an absence as FMLA leave even if an employee (who may be too ill) has not requested FMLA leave for the absence. An example was provided of an employee who has a heart attack and misses five weeks from work but does not request FMLA leave. The Church further observes that providing the employee with the required notice when the employee is so ill would be uncaring.

The regulations have been revised to permit the employer to mail the notice to the employee's address of record if leave has already begun. The regulations also provide that notice of need for leave may be given by the employee's spokesperson, (*e.g.,* spouse, adult relative, attorney, doctor).

The California Department of Fair Employment and Housing comments that the regulations should be more specific regarding the obligations of covered employers who have no eligible employees. Section 825.500 of the Final Rule has been revised to specify the obligations of covered employers who have no eligible employees.

The regulation has also been revised to make it clear that if an employer fails to provide the required information, it may not take action against an employee for failure to comply with the

employee's obligations required to be set forth in the notice.

Employee Notices (to Employers) When Leave is Foreseeable (§ 825.302)

Four commenters suggested that it be made clear that the employee is required to give notice of need for FMLA leave to the employee's supervisor or other appropriate person, and need not make the request to some top official of the company.

The employee is required to provide notice of need to take FMLA leave to the same person(s) within the company the employee ordinarily contacts to request other forms of leave, usually the employee's supervisor. It is the responsibility of the supervisor either to refer the employee who needs FMLA leave to the appropriate person, or to alert that person to the employee's notice. Once the employee has provided notice to the supervisor or other appropriate person in the usual manner, the employee's obligation to provide notice of the need for FMLA leave has been fulfilled.

The Nationsbank Corporation requested guidance as to the circumstances in which an employer may choose to waive notice requirements. Throughout the regulations, reference is made to the employer's ability to waive notice and certification requirements. As long as the employer's discretion is applied in a nondiscriminatory manner, the employer will have complied with these requirements.

Fisher and Phillips observed that the regulations do not address the employee's obligation to provide notice of any needed extension to leave already requested and underway. Sommer and Barnard also took issue with the notice requirements regarding an extension of leave, and suggested that the regulations should be amended to provide that an employee on FMLA leave who fails to report to work at the expiration of the leave and fails to give FMLA notice of the need for extension of the leave prior to its expiration shall not be entitled to the job restoration protections of the Act or the regulations, unless it was impossible to give such notice prior to expiration of the leave and the employee thereafter gives the earliest and best notice possible. The regulation has been amended in § 825.309(c) to provide that an employee shall advise the employer if leave needs to be extended. In addition, the employer may obtain such information from employees through status reports.

Section 825.302(g) has also been revised to clarify employee notice obligations when the employer's paid

leave plan contains lesser obligations and paid leave is substituted for unpaid FMLA leave. An employer may not impose FMLA's stricter notice requirements if the employer's applicable leave plan allows less advance notice for the type of leave being substituted. See, also, § 825.207(h).

The Department also notes that the regulations continue to provide that although an employee is only required by FMLA to give oral notice of the need for leave, an employer may require an employee to comply with its usual and customary notice requirements, including a requirement of written notice. If an employee fails to give written notice in these circumstances, an employer may not deny or delay leave, but may take appropriate disciplinary action.

Employee Notices (to Employer) When Leave is *Not* Foreseeable (§ 825.303)

The Women's Legal Defense Fund suggested that section (a) be amended to reflect that an employee may not be foreclosed from beginning leave even if one or two days' notice is not possible. The final rule has been amended to include guidance that notice should be given as soon as practicable.

Two commenters indicated that verbal notice is not sufficient and the employer should be permitted to require a written notice, requesting leave and providing a general reason for the leave if FMLA. They suggested that if an employee needs to request the leave in an emergency, oral notice should be sufficient but only if the employee confirms that request in writing within two working days.

Nothing in the regulations prohibits an employer from requiring written notice to take or request leave if this is the employer's usual procedure. The employer may request written notice for all leave. The employer, however, may not deny or delay FMLA-qualifying leave when the employee provides verbal notice as soon as practicable. Having a hard and fast rule that the employee must give written notice or confirm the verbal notification within one or two working days would work an unnecessary hardship on many employees who have taken leave for a medical emergency and are not in a position to provide written notice either due to their own serious health condition, or that of an immediate family member.

Employer's Recourse When Employee Fails To Provide Notice (§ 825.304)

Seven commenters provided observations regarding this section. Four of the commenters urged that an employer not be permitted to *deny* leave under any circumstances when the employee fails to provide adequate notice, but only delay the leave. They further stated that the employer should be permitted to delay the leave only if the employer can show that the activities of the business were prejudiced by the employee's failure to provide adequate notice. They questioned the extent of an employer's right to take disciplinary action in the event adequate notice is not provided and urged that the employer be prohibited from denying leave or discharging the employee for inadequate notice. One commenter asked for a definition of the term *as soon as practicable.*

Section 102(e) of the statute sets out obligations of the employee to provide notice to the employer of the need to take leave in both foreseeable and unforeseeable circumstances. As this is an affirmative responsibility of the employee it would be inappropriate to require the employer to show any prejudice resulting from an employee's failure to provide adequate notice. As used in the regulation, as soon as practicable is further explained as within one or two business days unless that is not feasible. The regulation is revised to provide that an employer may delay (rather than deny) leave where required notice has not been given.

Medical Certification of Serious Health Conditions (§ 825.305)

The Community Legal Services, Inc. commented that low income workers may be unable to persuade health care providers to provide medical certifications. They urge an exception for such workers if obtaining the certification is not practicable under the particular circumstances despite the employee's diligent, good faith efforts, and a similar exception that would excuse a person's inability to produce a certification or all the information requested by the employer because of non-cooperation by the health care provider. If an employee under these circumstances is unable to provide a complete certification, the employer could request a second opinion at the employer's expense, they suggest. Further, any employer that requires a certification should provide a copy to the employee.

The provision for medical certification at the request of the employer is a basic qualification for FMLA leave. It is the employee's responsibility to provide such certification. The Final Rule has been amended in § 825.311(b) to provide that

if an employee never produces the requested certification, the leave is not FMLA leave. It is the employee's responsibility to find a health care provider that will provide a complete certification. As the employee is providing the certification to the employer, if the employee wishes to have a copy he/she may make a copy before submission to the employer. The regulation has been amended to provide for copies of a second or third opinion to be provided by the employer to the employee upon the employee's request.

Eight commenters observed that providing a minimum of 15 days for the employee to provide medical certification is unreasonable. In some cases the certification would not be provided until the leave is over if the leave is only for a short period of time, and the employee would have returned to work, thereby denying the employer the opportunity to obtain second and third opinions where appropriate and designating the leave as FMLA leave after the employee has returned to work. Several alternatives were proposed, from allowing the employer to define an acceptable time frame to allowing only one week to provide the certification.

The regulations have been amended in § 825.305(a)(2) to track the statute more closely. Ordinarily, when leave is foreseeable and at least 30 days notice has been provided, the employee should provide the medical certification before the commencement of leave. If the need for leave does not allow for this, the employee should provide the certification within the time frames established by the employer for submission of the certification, which must allow at least 15 days after the employer's request. Section 825.208 of the regulations has been amended to enable the employer to make a preliminary designation of leave when the certification was not provided prior to the commencement of leave, or the employer is awaiting a second or third opinion, and to confirm or withdraw the designation depending upon the results of the medical opinions even though the employee has returned to work. The Department believes that the requirement to provide the certification in no less than 15 days is reasonable as the employee has no control over the timing of the health care provider's completion of the certification form.

Two law firms, Fisher and Phillips and Sommer and Barnard, observed the regulations are silent regarding time frames for submission of recertifications. Section 825.308 has been amended to clarify that recertifications are subject to the same

15-day time frames as the original certification.

Section 825.305(e) has also been revised to clarify the certification requirements when the employer's paid leave plan contains lesser obligations and paid leave is substituted for unpaid FMLA leave. If the employer's sick or medical leave plan contains less stringent certification requirements than those of FMLA, and paid sick, vacation, personal or family leave is substituted for unpaid FMLA leave as provided in § 825.207, only the employer's less stringent sick leave certification requirements may be imposed. See, also, § 825.207(h).

Information Required in Medical Certifications (§ 825.306)

Ten commenters questioned the necessity for the health care provider to provide a diagnosis when providing a medical certification of the existence of a serious health condition, and suggested that providing appropriate medical facts is sufficient for this purpose. The Women's Legal Defense Fund comments were reasonably representative of these commenters. They observed that the optional certification form provides more information to the employer than statutorily required (for example, diagnosis and regimen of treatment), and that inquiries regarding such matters may be a violation of the ADA. They noted that health care providers may be reluctant to provide detailed medical information due to ethical and privacy concerns, and expressed concerns regarding confidentiality and employee waivers. They recommended that the form include space for an employee signature which would provide a limited waiver from the employee to release the information to the employer for purposes of FMLA leave only.

Other commenters questioned the absence of a box to check on the form to indicate that an employee has been prescribed medicine, an indication of continuing treatment under the Interim Final Rule. The Hyman Construction Co. observed that it would be helpful if the form provided space for the health care provider's address and telephone number. Still others wanted the health care provider's Employer Identification Number and Social Security Number.

After a review of these comments, and significant revisions to the definition of "serious health condition" in § 825.114 of the regulations, this section and Form WH–380 have been completely revised. In general, the purpose of the revisions is to allow employers to obtain information from a health care provider to verify that an employee in fact has a serious health condition, and the likely periods of absence by the employee, but no unnecessary information. The form has been revised, for example, to require certification as to which aspect of the definition applies, and to state the medical facts to support the definition. The regulation and form no longer provide for diagnosis, and make clear, consistent with the ADA and privacy concerns, that all information on the form relates only to the condition for which the employee is taking FMLA leave. However, it is considered necessary to include information regarding the regimen of treatment in general terms (e.g., prescription drugs) since this is one of the specific requirements of a serious health condition under § 825.114(a)(2)(i)(B).

The suggestion that the health care provider be required to furnish an Employer Identification Number and/or Social Security Number has not been adopted. The optional medical certification form is not a substitute for an insurance claims form; its use is intended for purposes of confirming the existence of a serious health condition, and thus the need for FMLA leave. The information provided by the form is required to be kept confidential by the employer and it would be inappropriate for the employer to place this form into the ordinary business process for insurance claims.

The Department has not adopted the suggestion that a waiver by the employee is necessary for FMLA purposes. The process provides for the health care provider to release the information to the patient (employee or family member). The employee then releases the information (form) to the employer. There should be no concern regarding ethical or confidential considerations, as the health care provider's release is to the patient. The employee may choose to withhold the certification from the employer. In so doing, however, the opportunity to take FMLA leave is sacrificed, but that would be the employee's decision. In the more than 12 months that have elapsed since the Interim Final Rule became effective, the Department has received no feedback that the absence of an employee waiver on the optional medical certification form has created any difficulty for the health care community, employers, or employees.

The Equal Employment Opportunity Commission provided comments regarding the medical certification process. EEOC suggested that questions 5 and 6 of the form are too broad. Question 5 asks for the probable duration of a condition. EEOC recommended the question be revised to ask the probable duration of the condition for which the leave is requested, and suggested Question 6 is overly broad for the same reason, i.e., asking about the regimen of treatment to be prescribed. Question 5 has been revised. Question 6 has not been deleted because the information is necessary to determine if a serious health condition exists. However, the form makes clear that all information relates to the condition for which leave is needed.

The Burroughs Wellcome Company and Joan L. Kalafatas observed that sometimes employers need other medical information for purposes other than FMLA leave, and suggested that the FMLA regulations indicate that other information may be requested although it may not be used to make decisions required under FMLA. The Department disagrees with this comment. If the employer needs medical information for some other purpose, the employer needs to make an additional, perhaps simultaneous, request.

Massmutual Life Insurance Company recommends an employer with a paid leave program be allowed to use a single certification form for FMLA and paid leave purposes, asking that the form be permitted to include information in addition to that identified by the FMLA regulations only if the additional information would be used to verify eligibility for paid leave. It would not be appropriate to permit employers to request additional medical information to support an employee's desire to substitute accrued paid leave for FMLA leave. The regulations provide that any such requirements may not be more stringent than those required by FMLA. If the commenter is referring to eligibility for *benefit plans* rather than paid leave, the Department has included a provision in the Final Rule that if an employee must meet higher standards to qualify for *payments* from an employee benefit plan, e.g., a disability benefit plan, the employee is required to comply with the requirements of the benefit plan in order to receive payments. The employee may choose not to meet the higher standards of the benefit plan and thereby not receive payments from the plan; however, the employee continues to be entitled to FMLA leave. Section 825.207(d) has been amended to incorporate this guidance.

The California Department of Fair Employment and Housing urged that § 825.306(b) be amended to reflect that collection of this information by the employer is discretionary and that it is appropriate for the employer to comply

**Affidavit of Laurence V. Cronin**                    **Exhibit W**

# TALX

### UC eXpress ™

August 16, 2004

DEPARTMENT OF LABOR          OFFICE 1
4425 N. MARKET STREET
PO BOX 9951
WILMINGTON  DE  19809-0951

FAX (302) 761-6636

RE:  H. LIPSCOMB                    Account:  42453-6
**REDACTED**                       Employer:  ELECTRONIC DATA SYSTEMS CORPORAT
                                              ION

Docket/Case Number: 156049

Dear State Representative:

This is in reference to form UC-409, Notice of Determination, dated August 4, 2004
which allows benefits to the above individual.  We respectfully request a
redetermination based on the following information.

The claimant was discharged due to excessive absenteeism and tardiness. Employee
went out for surgery on 4/29/04.  On June 2, 2004, we received denial of short term
disability due to employee failure to provide medical information to support her
time off work. On June 17, 2004, we received notification that the leave of absence
was denied for FMLA due to certification not being provided.  Employee was given 15
days to appeal.  No documentation was provided & appeal period expired.  Employee
was discharged due to 14 days of unexcused absence.

Be advised, TALX UCM Services, Inc., UC eXpress(SM) is a duly authorized agent
empowered to act on behalf of the above employer.  Any correspondence related to
this individual should be mailed to: P.O. Box 283, St. Louis, MO 63166-0283.

For additional information, please contact me at (800) 366-6660 or (314) 997-2100,
ext. 2851 or you can reach me via email at clms2851@talx.com or fax (314) 983-3851.

Thank you for your time and consideration.

Sincerely,

*Tara Hinthorne*

Tara Hinthorne
Claims Service Representative
P, PM, MS

HL-060

**Affidavit of Laurence V. Cronin**                    **Exhibit X**



**Smith Katzenstein Furlow** LLP

*Attorneys at Law*

The Corporate Plaza
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, Delaware 19899
(Courier 19801)
Phone (302) 652-8400
Fax (302) 652-8405
www.skfdelaware.com

aig B. Smith
obert J. Katzenstein
David A. Jenkins
urence V. Cronin
Michele C. Gott
thleen M. Miller
: E. Polesky
ger D. Anderson
obert K. Beste
Etta R. Wolfe

February 22, 2006

***VIA FACSIMILE AND FIRST CLASS MAIL***

Thomas J. Piatak, Esquire
Baker & Hostetler LLP
3200 National City Center
1900 E. Ninth Street
Cleveland, OH 44114-3485

***Re:    Lipscomb v. Electronic Data Systems
C.A. No. 05-477 SLR***

Dear Mr. Piatak:

Enclosed are courtesy copies of interrogatories and a request for production of documents that we are serving today as a result of yesterday's deposition of the plaintiff that defendant agreed to adjourn before it concluded. While I stated my objections on the record, I am writing so that you can more fully understand plaintiff's position, particularly since we believe that the defendant has not complied with its responsibilities pursuant to Rules 26(a)(1)(B) and 26(e). As I am sure your local counsel will advise you, it is not the practice in this jurisdiction to conduct litigation by ambush, and we hope that discovery will show that this is not what occurred in this instance.

From your questioning of the plaintiff yesterday, it became increasing apparent that the defendant intends to rely on a provision within an employee policy manual that was disclosed to us for the first time yesterday during plaintiff's deposition. (Lipscomb Deposition Ex. C). As you know, the existence or significance of this manual was not raised by defendant or its representative at plaintiff's unemployment hearing in 2004, nor was it referenced in defendant's initial disclosures which were served last October. While I appreciate your explanation that you were not personally involved in preparing either the initial disclosures or defendant's document production, you did decide to use these documents at the deposition yesterday, and your firm has handled the defense of this matter from the outset. As you well knew at the time you used them, Exhibits B, C and D do not bear production numbers from either the plaintiff or the defendant. I have never seen them before. As I mentioned yesterday, since all three documents were apparently transmitted from or to EDS's offices in Delaware in July or August of

10011527.WPD

Thomas J. Piatak, Esquire
February 22, 2006
Page 2

last year after the complaint was filed in this case, I am very concerned that there may have been a conscious decision made by defendant not to disclose the existence of these documents until plaintiff's deposition. If that proves to be the case, I intend to seek sanctions.

I have no doubt that you and the other attorneys from your firm that have worked on this matter are well aware of the purpose of Rule 26(a)(1) initial disclosures. The advisory committee notes from 1993 make very clear the importance of these disclosures, and the detailed initial disclosures that were provided in this case gave me no reason to believe that defendant may have been withholding documents that it believed were relevant to its defenses in this case. From our conversations yesterday I also understand that at least some of the documents identified in the initial disclosures, (i.e., Plaintiff's personnel file), were also not produced in their entirety in response to our single request that defendant produce all documents identified in its initial disclosures. Defendant chose not to object to our request for production. Therefore, there is no reason why all of the documents identified in those initial disclosures should not have been produced last November. Please have all the documents identified in those initial disclosures produced immediately.

If you have any questions regarding plaintiff's position regarding this matter or the enclosed discovery, please let me know.

Very truly yours,

Laurence V. Cronin

LVC/vkm

Enclosure

cc:    Alyssa M. Schwartz, Esquire (via facsimile and first class mail w/ enc.)

10011527.WPD

**Affidavit of Laurence V. Cronin**                              **Exhibit Y**

DEPOSITION
EXHIBIT
EDS-7
Rwwwr 4·12·06

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

HESTAL LIPSCOMB,                      )
                                      )
      Plaintiff,                    )
                                      )
v.                                    )          C.A. No.   05-477 SLR
                                      )
ELECTRONIC DATA SYSTEMS               )
CORPORATION,                          )
a Delaware Corporation,               )
                                      )
      Defendant.                    )          JURY TRIAL DEMANDED

## PLAINTIFF'S FIRST SET OF INTERROGATORIES
## DIRECTED TO DEFENDANT

Pursuant to Fed. R. Civ. P. 33, plaintiff requests the defendant to answer, under oath, the following interrogatories within 30 days of the date of service.

### INSTRUCTIONS

1.    Please note that all answers are to be made separately and fully, and that an incomplete or evasive answer is a failure to answer. Where an interrogatory calls for an answer in more than one part, please separate the parts in your answer accordingly so that each part is clearly set out and understandable.

2.    Where your knowledge or information in your possession is requested, such request includes knowledge or information in possession of your representatives, employees, agents, independent contractors, insurers, and, unless privileged, your attorneys.

3.    If you have only incomplete knowledge of the answer to an interrogatory, please answer to the extent of your knowledge and state specifically what part or area of the interrogatory you have only incomplete knowledge of and identify the person(s) who does

or might have additional knowledge or information to complete the answer.

4.    You may answer any interrogatory in whole or in part by attaching a document(s) which contains information sufficient to do so.  Such document(s) may, if authenticated, be a copy of the original.  Any document(s) used to answer an interrogatory may contain other information as well; however, the relevant portion of that document(s) must be so marked or indexed.

5.    The term "document(s)" refers to all writings of any kind, including the originals and all nonidentical copies, whether different from the original by reason of any notation made on such copies of otherwise, including without limitation, correspondence; memoranda; notes, diaries; statistics; letters; materials; orders; directives; interviews; telegrams; minutes; reports; studies; statements; transcripts; summaries; pamphlets; books; interoffice and intraoffice communications; notations of any sort of conversations, telephone calls, meetings or other communications; bulletins; printed matter; teletype; telefax; worksheets; and all drafts, alterations, modifications, changed and amendments of any of the foregoing; graphic or aural recordings or representations of any kind, including without limitation, photographs, charts, graphs, microfiche, microfilm, videotape, records, motion pictures; and electronic, mechanical, or electrical recordings or representations of any kind, including without limitation, tapes, cassettes, cartridges, discs, chips, electronic mail and records.

6.    Where the identity of a person is requested, please state his or her full name; any known nickname and alias(es); present or last known home address and telephone number; present or last known position and business affiliation or employment and the

address and telephone number there; and his or her employment and position at the time in question. For persons whose addresses are known to be inaccurate at this time, please state the most reliable contact address and contact person to your knowledge or information.

7.      Where a statement or description is requested, please include a specific account of what is being stated or described, including where applicable, without limitation, the date or time period involved; the identity of person(s) from whom the information was learned, who would have knowledge of that information and/or who participated or were present; what happened in chronological order relating each identifiable event, response, act, or other thing; where, by address and, if known, ownership and use, the occurrence took place; the context or circumstances in which the occurrence took place; and what response or reaction existed to cause the occurrence to take place and/or was made after the occurrence took place.

8.      Unless otherwise indicated, the time period each interrogatory refers to is that of the occurrences described or referred to in the complaint and any amendments thereto.

9.      Please note that, pursuant to Fed. R. Civ. P. 26(e), you are under a continuing duty to supplement your responses.

10.     "FMLA" refers to the federal Family and Medical Leave Act.

11.     "You" and "your" refers to Electronic Data Systems Corporation.

### INTERROGATORIES

1.      Identify all documents that were transmitted by facsimile with Exhibit A to these interrogatories ("Exhibit A") when it was transmitted on or about August 15, 2005 to or from number 302-454-9375.

10011511.WPD                            3

2.      Identify the location of the facsimile machine that corresponded to number 302-454-9375 on August 15, 2005.

3.      Identify all persons who sent and/or received copies of Exhibit A when it was transmitted on or about August 15, 2005 to or from number 302-454-9375.

4.      Identify all documents that were transmitted by facsimile with Exhibit B to these interrogatories ("Exhibit B") when it was transmitted on or about August 15, 2005 to or from number 302-454-9375.

5.      Identify all persons who sent and/or received copies of Exhibit B on August 15, 2005 when it was transmitted on or about August 15, 2005 to or from number 302-454-9375.

6.      Identify all documents that were transmitted by facsimile with Exhibit C to these interrogatories ("Exhibit C") when it was transmitted on or about July 12, 2005 to or from number 302-454-9375.

7.      Identify all persons who send and/or received copies of Exhibit C when it was transmitted on or about July 12, 2005 to or from number 302-454-9375.

8.      Identify all documents that refer or relate to plaintiff and her employment by you.

9.      Identify all documents contained in plaintiff's "personnel file," as identified in paragraph 2(a) of defendant's Rule 26 initial disclosures served on October 7, 2005.

10.     Identify all locations where copies of Exhibits A and C were kept by you from July 2002 until February 21, 2006.

11.     Identify all files in which documents are kept that refer or relate to the

plaintiff, including but not limited to, the "personnel file" referenced in your initial disclosures, as well as any medical file, FMLA file, worker's compensation file or any other collection of documents that refers or relates to the plaintiff.

12.     Identify all those persons who were responsible for maintaining the contents of each of the files identified in response to interrogatory number 11 from July 2002 until the present.

13.     Identify all those persons who were involved in drafting or providing information or documents for defendant's initial disclosures.

14.     Identify all documents that refer or relate to any leave sought by plaintiff while employed by you that was considered by you to be possibly subject to the FMLA.

15.     Identify all documents that were provided to plaintiff advising her as to a change in vendors with respect to the manner in which requests for FMLA leave would be handled by you.

16.     Identify all documents previously identified in paragraph 2 of your initial disclosures that have not yet been produced to plaintiff in this litigation.

17.     Identify all documents that refer or relate to any instance between 2000 and the present in which defendants terminated one of its employees relying in whole or in part on Exhibit B.

SMITH, KATZENSTEIN & FURLOW LLP

Laurence V. Cronin (ID No. 2385)
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE 19899 (Courier 19801)
Telephone: 302-652-8400
Facsimile: 302-652-8405
Email: LVC@skfdelaware.com

Attorneys for Plaintiff Hestal Lipscomb

Dated: February 22, 2006

Ex. A

# EDS DELAWARE HEALTHCARE SERVICES ACCOUNT HANDBOOK ACKNOWLEDGEMENT FORM

I hereby acknowledge that I have received a copy of the EDS Delaware Healthcare Services Account Handbook, and have read and understood it.

Printed Name of Employee: _HESTAL LIPSCOMB_

Signature of Employee _____    Date _12/12/03_

*Ex. B*

# Attendance Guidelines

EDS provides general attendance guidelines. The guidelines may be modified to meet the business requirements for each team.

The Delaware Healthcare Services Account adheres to corporate guidelines as described in the following paragraphs.

## Audience

This guideline applies to all employees working in the EDS/USGS organization.

## Purpose

The purpose of this guideline is to ensure consistency in the administration of attendance for all employees within the EDS/USGS organization. Overall attendance can be a significant factor in continued employment, performance reviews, salary reviews and in evaluating advancement possibilities. Regular attendance is a requirement of each person's job. Remember that attendance at work is vital to your success at EDS/USGS and to the success of our business.

## General Guidelines

Specific work hours are established based on business needs and contractual obligations, as determined by EDS/USGS leadership. Each employee is expected to be at his/her workstation at the designated start time and at the scheduled return time from breaks and lunches. Each employee is expected to comply with his/her assigned schedule as determined by his/her leader in order to meet the requirements of his/her position.

---

Note:    The requirements of these guidelines exclude any qualifying Family Medical Leave Act (FMLA) absences or other protected leave.

---

Personal activities, including but not limited to telephone calls, should be confined to lunch and breaks, when possible. Employees should make every reasonable effort to schedule personal appointments (e.g., doctor, dentist, etc.) before or after their shift to ensure minimal disruption of the workload.

EDS leadership on a case-by-case basis determines disciplinary action for violation of these guidelines.

## Absences

If any employee is absent for three (3) or more days consecutively due to a medical reason, they may be required to provide a health care provider's certification to their manager upon return to the workplace. Further, a health care provider's certification may be required to validate any other illness or time away from work due to medical reason, if deemed appropriate by EDS/USGS leadership. Excessive absenteeism may result in disciplinary action up to and including separation from EDS.

## Tardiness & Reliability

Tardiness is defined as an employee not being at his/her workstation at the designated start time and at scheduled return times from lunch and breaks. In addition, if an employee leaves early (unexcused), the time away from work may be considered an absence. Excessive tardiness may result in disciplinary action up to and including separation from EDS.

## No call/no show

A no call/no show is defined as an employee who did not report to work as scheduled and did not follow the EDS/USGS established notification procedure. The EDS/USGS notification procedure is discussed with all new and transferred employees to ensure they have appropriate contacts to notify if they are unable to report to work. Failure to follow the account's established notification procedures may result in disciplinary action up to and including separation from EDS.



MetLife
Synchrony Integrated Disability Services at ACS
P O Box 14680 Lexington KY 40512-4680
Tel 800-842-1949

August 7, 2003

Hestal Lipscomb
3111 W. 2nd Street 1st Floor
Wilmington, DE  19805

*Ex. C*

RE: Claim No. 590307268817

Dear Ms. Lipscomb:

We have evaluated your request for Short Term Disability (STD) and find that you are eligible for leave under the terms of your policy. Based on the medical information submitted to this office, your absence qualifies for Disability Leave from August 1, 2003 through August 18, 2003. You are expected to return to work on August 19, 2003.

You are also eligible for leave under the <u>Family & Medical Leave Act of 1993</u> (FMLA) from August 1, 2003 through August 18, 2003 and your absence will be counted as part of your entitlement.

As of July 7, 2003 you have the following amount of Short Term Disability Benefits **available:**

| Short Term disability at 100% | 8 weeks |
|---|---|
| Short Term disability at 60% | 18 weeks |

You are subject to a five day waiting period before disability benefits begin. You will be paid Salary Continuance during your waiting period. Your benefits will be paid as follows:

| August 1, 2003 | Through | August 7, 2003 | Salary Continuance |
|---|---|---|---|
| August 8, 2003 | Through | August 18, 2003 | Benefits paid at 100% of regular pay |
| N/A | Through | N/A | Benefits paid at 60% of regular pay |

If your absence extends beyond August 18, 2003 you must provide clinical documentation of the medical reasons for your continued absence and how they will impact your ability to return to work. Although we will attempt to contact you and your physician, it is your responsibility to ensure Synchrony is provided the additional information, which may include office notes, laboratory data, and other pertinent tests needed to evaluate your condition and your functionality. This documentation must be received by us prior to noon on your approved through date of August 18, 2003. Please understand, however, that receipt of additional information is not a guarantee of continued approval. Failure to provide the required documentation by your approved through date of August 18, 2003 will result in the denial of your claim beyond August 18, 2003.

When you return to work, with or without restrictions, you will be required to present a physician's release to return to work to your manager. However, the absence of a physician's release may not affect the claim decision made by Synchrony.

In the event that you are able to return to work prior to August 19, 2003 you are required to notify Synchrony and your EDS Supervisor of the day of your return. Failure to do so can affect system accessibility and continuation of health care benefits.

DEPOSITION
EXHIBIT

_EDS-8_

_Royer_   4.12.06

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**RECEIVED**

MAR 2 4 2006

**LVC**

HESTAL LIPSCOMB,                        )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )   C.A. No. 05-477-SLR
                                        )
ELECTRONIC DATA SYSTEMS                 )   JURY TRIAL DEMANDED
CORPORATION,                            )
                                        )
        Defendant.                      )

## DEFENDANT'S RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

NOW COMES Defendant Electronic Data Systems Corporation ("EDS"), by and through

its counsel, and hereby answers and responds to Plaintiff's First Set of Interrogatories as follows:

### GENERAL OBJECTIONS

EDS objects to Plaintiff's Interrogatories to the extent that:

1.      They seek to impose obligations upon Defendant inconsistent with the Federal

Rules of Civil Procedure.

2.      Plaintiff's instructions exceed the requirements of the Federal Rules of Civil

Procedure.

3.      Plaintiff has refused to clarify the parameters of her FMLA interference claim

against EDS so EDS can respond to the Interrogatories with specificity.

4.      Plaintiff has refused to clarify the parameters of her FMLA retaliation claim

against EDS so EDS can respond to the Interrogatories with specificity.

Subject to, and without waiving the foregoing objections, EDS hereby answers Plaintiff's

First Set of Interrogatories as follows:

1.    Identify all documents that were transmitted by facsimile with Exhibit A to these interrogatories ("Exhibit A") when it was transmitted on or about August 15, 2005 to or from number 302-454-9375.

**ANSWER:**

EDS objects to Interrogatory No. 1 on the grounds that it is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, and seeks information that is protected by the attorney-client privilege and/or the work product doctrine.  Subject to, and without waiving the foregoing objections, EDS states that the documents contained in Exhibits A and B were the only non-privileged documents transmitted by facsimile on or about August 15, 2005, to or from number 302-454-9375.

2.    Identify the location of the facsimile machine that correspond to the number 302-454-9375 on August 15, 2005.

**ANSWER:**

EDS objects to Interrogatory No. 2 on the grounds that it is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, and seeks information that is protected by the attorney-client privilege and/or the work product doctrine.  Subject to, and without waiving the foregoing objections, EDS states that the facsimile machine corresponding to the number 302-454-9375 is located in EDS' Newark, Delaware facility.

3.    Identify all persons who sent and/or received copies of Exhibit A when it was transmitted on or about August 15, 2005 to or from number 302-454-9375.

**ANSWER:**

EDS objects to Interrogatory No. 3 on the grounds that it is irrelevant, not reasonably

2

calculated to lead to the discovery of admissible evidence, and seeks information that is protected by the attorney-client privilege and/or the work product doctrine.

4.    Identify all documents that were transmitted by facsimile with Exhibit B to these interrogatories ("Exhibit B") when it was transmitted on or about August 15, 2005 to or from number 302-454-9375.

**ANSWER:**

EDS objects to Interrogatory No. 4 on the grounds that it is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, and seeks information that is protected by the attorney-client privilege and/or the work product doctrine. Subject to, and without waiving the foregoing objections, EDS states that the documents contained in Exhibits A and B were the only non-privileged documents transmitted by facsimile on or about August 15, 2005, to or from number 302-454-9375.

5.    Identify all persons who sent and/or received copies of Exhibit B when it was transmitted on or about August 15, 2005 to or from number 302-454-9375.

**ANSWER:**

EDS objects to Interrogatory No. 5 on the grounds that it is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, and seeks information that is protected by the attorney-client privilege and/or the work product doctrine.

6.    Identify all documents that were transmitted by facsimile with Exhibit C to these interrogatories ("Exhibit C") when it was transmitted on or about July 12, 2005 to or from number 302-454-9375.

**ANSWER:**

EDS objects to Interrogatory No. 6 on the grounds that it is irrelevant, not reasonably

3

calculated to lead to the discovery of admissible evidence, and seeks information that is protected by the attorney-client privilege and/or the work product doctrine. Subject to, and without waiving the foregoing objections, EDS states that the document contained in Exhibit C was the only non-privileged document transmitted by facsimile on or about July 12, 2005, to or from number 302-454-9375.

7.    Identify all persons who sent and/or received copies of Exhibit C when it was transmitted on or about July 12, 2005 to or from number 302-454-9375.

**ANSWER:**

EDS objects to Interrogatory No. 7 on the grounds that it is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, and seeks information that is protected by the attorney-client privilege and/or the work product doctrine.

8.    Identify all documents that refer or relate to plaintiff and her employment by you.

**ANSWER:**

EDS objects to Interrogatory No. 8 on the grounds that it is vague, overbroad, unduly burdensome, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. Interpreted literally, it requests EDS to identify and produce any and all documents that reflect upon, directly or indirectly, anything at all having to do with plaintiff. These documents are bound to number in the thousands inasmuch as they might include any document drafted by plaintiff or any document that mentions her name or otherwise relates to her. To the extent plaintiff can be more specific about the documents which relate to her claims or defenses, EDS will respond accordingly. Subject to, and without waiving the foregoing objects, see documents produced by EDS. Further answering, see EDS' Response to Plaintiff's First Request for Production of Documents.

RLF1-2994876-1

9.    Identify all documents contained in Plaintiff's "personnel file," as identified in paragraph 2(a) of defendant's Rule 26 initial disclosures served on October 7, 2005.

**ANSWER:**

See EDS' response to Plaintiff's First Request for Production of Documents, which contains all the non-privileged documents from the personnel file maintained on Plaintiff at EDS' corporate office.

10.    Identify all locations where copies of Exhibits A and C were kept by you from July 2002 until February 21, 2006.

**ANSWER:**

EDS objects to Interrogatory No. 10 on the grounds that it is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, and seeks information that is protected by the attorney-client privilege and/or the work product doctrine.

11.    Identify all files in which documents are kept that refer or relate to the plaintiff, including but not limited to, the "personnel file" referenced in your initial disclosures, as well as any medical file, FMLA file, worker's compensation file or any other collection of documents that refers or relates to the plaintiff.

**ANSWER:**

EDS objects to Interrogatory No. 11 on the grounds that it is vague, irrelevlant, not reasonably calculated to lead to the discovery of admissible evidence, ambiguous, awkwardly phrased, unduly burdensome, and overbroad.    EDS further objects on the grounds that Interrogatory No. 11 seeks information protected by the attorney-client privilege and/or the work product doctrine.    Plaintiff's lawsuit does not entitle her to a wholesale review of EDS' confidential communications.    Subject to, and without waiving the foregoing objections, EDS

5

states that in addition to a personnel file maintained at EDS' corporate offices, Plaintiff's leaders maintained a manager's file on Plaintiff at EDS' Newark, Delaware facility. Further answering, see documents produced by EDS.

12.    Identify all those persons who were responsible for maintaining the contents of each of the files identified in response to Interrogatory number 11 from July 2002 to the present.

**ANSWER:**

EDS objects to Interrogatory No. 12 on the grounds that it is vague, ambiguous, awkwardly phrased, unduly burdensome, overbroad, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. EDS further objects on the grounds that Interrogatory No. 12 seeks information protected by the attorney-client privilege and/or the work product doctrine. Subject to, and without waiving the foregoing objections, EDS states that Barbara Jackson and Tracy Eaddy were responsible for maintaining the contents of the manager's file.

13.    Identify all those persons who were involved in drafting or providing information or documents for defendant's initial disclosures.

**ANSWER:**

EDS objects to Interrogatory No. 13 on the grounds that it is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, and seeks information protected by the attorney-client privilege and/or the work product doctrine. Subject to, and without waiving the foregoing objections, the initial disclosures were drafted by counsel for EDS and Barbara Jackson and Tracy Eaddy assisted counsel for EDS in providing information for EDS' initial disclosures.

RLF1-2994876-1

14.    Identify all documents that refer or relate to any leave sought by plaintiff while employed by you that was considered by you to be possibly subject to the FMLA.

**ANSWER:**

EDS objects to Interrogatory No. 14 on the grounds that it is vague, ambiguous, awkwardly phrased, unduly burdensome, overbroad, irrelevant, not reasonably calculated to lead to the discovery of admissible evidence.  EDS further objects on the grounds that Interrogatory No. 14 potentially calls for information protected by the attorney-client privilege and/or work product doctrine.   Subject to, and without waiving the foregoing objections, see documents produced by EDS, which contain EDS documents or documents EDS received during Plaintiff's employment, which related to any leave request sought by Plaintiff possibly subject to the FMLA.

15.    Identify all documents that were provided to plaintiff advising her as to a change in vendors with respect to the manner in which requests for FMLA leave would be handled by you.

**ANSWER:**

EDS objects to Interrogatory No. 15 on the grounds that it is vague, ambiguous, awkwardly phrased, unduly burdensome, overbroad, irrelevant, not reasonably calculated to lead to the discovery of admissible evidence.   Subject to, and without waiving the foregoing objections, EDS states that Synchrony's letters to plaintiff (produced in response to plaintiff's First Request for Production of Documents) provided her with information regarding the handling of her request for FMLA leave.

16.    Identify all documents previously identified in paragraph 2 of your initial disclosures that have not yet been produced to plaintiff in this litigation.

**ANSWER:**

EDS states that it has already produced all documents identified in paragraph 2 of its initial disclosures.

17.    Identify all documents that refer or relate to any instance between 2000 and the present in which defendants terminated one of its employees relying in whole or in part on Exhibit B.

**ANSWER:**

EDS objects to Interrogatory No. 17 on the grounds that it is irrelevant, vague, and not reasonably calculated to lead to the discovery of admissible evidence. Further answering EDS states Interrogatory No. 17 seeks information that is protected by the attorney-client privilege and/or the work product doctrine  Subject to, and without waiving the foregoing objections, EDS states that Roberta McWilliams was terminated for failing to provide medical documentation substantiating her absences.

Of Counsel:
Thomas J. Piatak
Roger G. Trim
Baker & Hostetler LLP
3200 National City Center
1900 East Ninth Street
Cleveland, OH  44114-3485
Telephone: (216) 621-0200


Dated:  March 23, 2006

Richard G. Elliott, Jr. (#68?)
elliott@rlf.com
Alyssa M. Schwartz (#4351)
schwartz@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King St., P.O. Box 551
Wilmington, DE 19899-0551
Telephone: (302) 651-7700

Attorneys for Defendant
Electronic Data Systems Corporation

8

RLF1-2994876-1

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2006, true and correct copies of the within document

were caused to be served on the attorney of record at the following address as indicated:

### BY VIA HAND DELIVERY

Laurence V. Cronin
Smith Katzenstein & Furlow
The Corporate Plaza
800 Delaware Avenue
7th Floor
P. O. Box 410
Wilmington, Delaware 19899

Alyssa M. Schwartz (#4351)
schwartz@rlf.com

RLF1-2931373-1