IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HESTAL LIPSCOMB, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 05-477-SLR |
| | ) | |
| v. | ) | |
| | ) | |
| ELECTRONIC DATA SYSTEMS | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT ELECTRONIC DATA SYSTEMS CORPORATION'S
### REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Of Counsel:
Thomas J. Piatak
Roger G. Trim
Baker & Hostetler LLP
3200 National City Center
1900 East Ninth Street
Cleveland, OH  44114-3485
Telephone: (216) 621-0200

Richard G. Elliott, Jr. (#687)
elliott@rlf.com
Alyssa M. Schwartz (#4351)
schwartz@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King St., P.O. Box 551
Wilmington, DE 19899-0551
Telephone: (302) 651-7700

Attorneys for Defendant
Electronic Data Systems Corporation

Dated:  July 18, 2006

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. ii

I    INTRODUCTION .................................................................................... 1

II.   LAW AND ARGUMENT ......................................................................... 2

    A.    EDS Is Entitled To Summary Judgment On Lipscomb's FMLA
    Interference Claim ............................................................................ 2

        1.    Lipscomb Knew She Was Required To Submit Medical
        Certification To Support Her Claim For FMLA Leave ................ 2

        2.    Lipscomb Was Fully Aware of the Consequences of Not Providing
        a Medical Certification and Cannot Prove She Suffered Any
        "Prejudice" from Language Employed by CIGNA in its May 20,
        2004 Letter ...................................................................................... 6

        3.    EDS Provided Numerous Opportunities For Lipscomb To Submit
        The Necessary Medical Certification .......................................... 10

    B.    EDS Is Entitled To Summary Judgment On Lipscomb's Claim For FMLA
    Retaliation ........................................................................................ 11

III.   CONCLUSION ...................................................................................... 13

## TABLE OF AUTHORITIES

### CASES

Brown v. SBC Communications, Inc.,
2005 U.S. Dist. LEXIS 41599 (E.D. Wis. 2005) ........................................................... 9

Collier v. Target Stores Corp.,
2005 U.S. Dist. LEXIS 6262 (D. Del. 2005) .............................................................. 11

Junker v. Amana Co., L.P.,
240 F. Supp. 2d 894 (N.D. Iowa 2003) ............................................................... 2, 5, 10

O'Reilly v. Rutgers, The State Univ. of New Jersey,
2006 U.S. Dist. LEXIS 2341 (D.N.J. 2006) ............................................................ 2, 10

Peter v. Lincoln Technical Inst., Inc.,
255 F. Supp. 2d 417 (E.D. Pa. 2002) ......................................................................... 8

Ragsdale v. Wolverine Word Wide, Inc.,
535 U.S. 81 .......................................................................................................... 6, 8, 9

Shtab v. Greate Bay Hotel and Casino, Inc.,
173 F. Supp. 2d 255 (D.N.J. 2001) ............................................................................ 2

### STATUTES

29 C.F.R. 825.301(c) ...................................................................................... 2, 4, 10

RLF1-3038440-1

## I.    INTRODUCTION

Despite its great length, the most remarkable thing about Lipscomb's brief is not what it says, but what it omits. In her brief, Lipscomb does not mention her admissions that it was her responsibility to submit medical documentation substantiating her claim for FMLA leave, that absences not covered by the FMLA could be considered unexcused absences, and that she knew that unexcused absences at EDS could lead to termination. (Lipscomb Dep. at 12-13, 33-34, 38, 39-40, 79-80). Rather, Plaintiff's Answering Brief is filled with straw men and red herrings designed to distract the Court from the weaknesses of her FMLA claims.

Lipscomb also ignores her testimony that no one from EDS interfered with her ability to submit medical documentation in support of her claim for FMLA leave, but that instead her superiors and co-workers at EDS were very helpful in assisting her. (Lipscomb Dep. at 99-100). Lipscomb fails to mention her admissions that Barbara Jackson personally urged her to submit medical documentation to CIGNA supporting her claim for FMLA leave and offered her the use of an EDS conference room for that purpose. (Lipscomb Dep., at 76-79). Likewise, Lipscomb omits her testimony that although she understood the importance of submitting the medical documentation to CIGNA, she never contacted anyone at CIGNA nor submitted any medical documentation to CIGNA following her discussions with Jackson. (Lipscomb Dep. at 55-57, 70, 78-80)[1]. Lipscomb also ignores the authority cited by EDS establishing that an employee seeking FMLA leave has the obligation to ensure that medical documentation supporting a claim

---

[1] Portions of the Lipscomb deposition are attached as Exhibit A to the Schwartz Affidavit. Additional pages of the Lipscomb deposition not previously included in the Schwartz Affidavit are attached at Exhibit A hereto.

for FMLA leave is actually received, and not merely submitted. See Junker v. Amana Co., L.P., 240 F. Supp. 2d 894 (N.D. Iowa 2003)

In short, Lipscomb has simply ignored the evidence and arguments cited by EDS in its Motion for Summary Judgment, implicitly recognizing that the Motion should be granted. This silence is unsurprising because these undisputed facts, standing alone, demonstrate that EDS is entitled to summary judgment. Nevertheless, in the interest of completeness, EDS will address each of the "facts" offered by Lipscomb in opposition to its Motion for Summary Judgment and demonstrate that none of these "facts" are genuine, material, or preclude summary judgment.

## II.    LAW AND ARGUMENT

### A.    EDS Is Entitled To Summary Judgment On Lipscomb's FMLA Interference Claim

#### 1.    Lipscomb Knew She Was Required To Submit Medical Certification To Support Her Claim For FMLA Leave

To prevail on her interference claim, Lipscomb must prove both that she was entitled to FMLA leave and that EDS denied her benefits to which she was entitled under the FMLA. O'Reilly v. Rutgers, The State Univ. of New Jersey, 2006 U.S. Dist. LEXIS 2341, at *10-11 (D.N.J. 2006). To prove entitlement to FMLA leave, Lipscomb was required to provide a medical certification substantiating her leave. Shtab v. Greate Bay Hotel and Casino, Inc., 173 F. Supp. 2d 255, 264 (D.N.J. 2001). ("[T]o safeguard the interests of employers and prevent abuses by employees" an employer may require certification to validate an employee's leave request.) An employer requiring a medical certification for FMLA leave merely has to mail notice of the certification requirement to the employee's address of record. See 29 C.F.R. 825.301(c).

Lipscomb devotes the bulk of her brief to the argument that she was unaware that she had to submit a medical certification to support her claim for FMLA leave. (Lipscomb Br. at 16-35).

2

However, Lipscomb's argument ignores her own testimony, relevant case law, and the FMLA-related documents she received from CIGNA, EDS' third-party FMLA administrator.[2]  Instead, Lipscomb asks the Court instead to create new law by rewriting 29 C.F.R. 825.301(c) to preclude employers from relying on the United States mail to provide an employee with a medical certification and to inform an employee of the consequences of failing to provide certification.  (Lipscomb Br. at 29-30).

Initially, Lipscomb claims that EDS' FMLA policy is silent regarding the need for medical certification to support FMLA leave.  (Lipscomb Br. at 19-20).  Lipscomb's assertion in this regard is directly contradicted by the express language of EDS' FMLA policy and the letters she received from CIGNA.  EDS' FMLA policy explicitly informs employees that if they are placed on FMLA leave, they will receive information concerning their FMLA responsibilities from CIGNA:

> If you are placed on or are applying for an FMLA leave of absence, you will receive an information packet from CIGNA AbilityReturns, **which includes what your responsibilities are during the leave**.

(Schwartz Aff., Ex. L, p. 78) (emphasis added).   The plain meaning of the word "responsibilities" includes providing a medical certification and fulfilling any other requirements necessary to obtain FMLA leave.  Consistent with this policy, CIGNA sent Lipscomb two letters (dated April 21, 2004 and May 20, 2004, respectively) informing her of the need to provide a medical certification to support her FMLA leave application.  (Schwartz Aff., Exs. K and O).  In fact, CIGNA's May 20 letter contained the actual medical certification she was to provide to CIGNA.

---

[2] CIGNA sub-contracted a portion of its FMLA administration duties to an entity known as "SHPS," that was known to EDS employees as CIGNA Leave Solutions.  There is absolutely no evidence that any documentation supporting Lipscomb's leave was ever sent to SHPS.

RLF1-3038440-1

Lipscomb attempts to evade the force of the CIGNA letters by claiming that she did not receive them, even though she admitted that they were sent to her proper address, she was not aware of any other mail sent to her that she did not receive, and she never complained to the Post Office about missing or undelivered mail. (Lipscomb Dep. at 49-52, 57, 69, 72-73, 98-99). Incredibly, Lipscomb testified that the CIGNA documents were the only pieces of mail she did not receive during the relevant time period. (Lipscomb Dep. at 98-99). The FMLA regulations cited by Lipscomb expressly provide that "If leave has already begun, the notice should be mailed to the employee's address of record." 29 C.F.R. § 825.301(c). This is precisely what EDS did. (Schwartz Aff., Exs. K, M, O, P, S). Faced with EDS' unquestioned compliance with the FMLA regulations, Lipscomb now asks this Court to create new law by writing a "certified mail" requirement into the FMLA regulations. (Lipscomb Br. at 29). By asking this Court to create new law, Lipscomb acknowledges that EDS has fully complied with its FMLA obligations.[3]

Moreover, even if Lipscomb never received any of the five letters mailed to her in connection with her request for FMLA leave, it is undisputed that Barbara Jackson met with Lipscomb after Lipscomb failed to provide the medical documentation requested in the letters, told her that CIGNA had not received the documentation, and told her to provide the medical documentation to CIGNA, even offering Lipscomb the use of an EDS conference room to accomplish this. (Jackson Dep., at 32-33, 37-39, 76-79, 81; Jackson Decl. ¶ 9; Lipscomb Dep.,

---

[3] Lipscomb tries to evade CIGNA's letters by claiming that "there is no corroboration that any of the three unsigned SHPS letters were sent to Lipscomb on the dates indicated on those letters." (Lipscomb Br. at 28). However, as Lipscomb also admits, "Copies of the three letters were produced from the files of EDS." (Id.). Thus, the letters' presence in EDS files is corroboration that the letters were mailed to Lipscomb.

4

at 76-79).[4]  It is also undisputed that Lipscomb **never** contacted CIGNA to confirm it received

her medical certification.  Lipscomb's failure to take this easy step demonstrates that she did not

fulfill her FMLA obligations by confirming that CIGNA **actually received** the medical

certification.  Junker v. Amana Co., L.P., 240 F. Supp. 2d 894, 901-02 (N.D. Iowa 2003)

(granting employer summary judgment on employee's FMLA interference claim where

employee failed to contact employer to receipt of FMLA documents).  Moreover, the only

medical documentation Lipscomb even claims was sent to CIGNA was sent on June 21, 2004,

**before** Lipscomb spoke with Jackson.

Lipscomb now suggests that she was not aware of the seriousness of Jackson's requests

and would have acted differently if she had been aware of their seriousness.  (Lipscomb Br. at

25; Lipscomb Aff. ¶¶ 7, 9).  However, Lipscomb testified that she fully understood the

importance of Jackson's requests, and no one from EDS interfered with her ability to comply

with them.

> Q.  You understood from [Barbara Jackson's] visits to you that it was
>     important for you to send the documents to CIGNA?
>
> A.  I understood the importance of it.  That's why I called the hospital to try
>     and have them – make sure they send the documents to CIGNA.
>
> *  *  *
>
> Q.  Did anyone from EDS do anything to prevent you from submitting that
>     medical documentation to CIGNA?
>
> A.  No.
>
> Q.  Did anyone from EDS do anything to interfere with your ability to submit
>     that medical documentation to CIGNA?

---

[4] Portions of the Jacskson deposition are attached as Exhibit D to the Schwartz Affidavit.  Additional pages of the Jackson deposition not previously included in the Schwartz Affidavit are attached at Exhibit B hereto.

A       No.

Q.      And in fact, Ms. Jackson offered to let you use a conference room to facilitate your sending that medical information to CIGNA, correct?

A.      Again, yes she did.

(Lipscomb Dep. at 79-80)

Based on the foregoing, it is undisputed that EDS complied with its FMLA obligations and informed Lipscomb of her need to submit a medical certification. Accordingly, EDS is entitled to summary judgment on Lipscomb's interference claim.

**2.      Lipscomb Was Fully Aware of the Consequences of Not Providing a Medical Certification and Cannot Prove She Suffered Any "Prejudice" from Language Employed by CIGNA in its May 20, 2004 Letter**

The remainder of Lipscomb's FMLA interference argument consists of her assertion that she was unaware of the consequences of failing to submit medical certification to support her FMLA leave. However, Lipscomb ignores her own admissions as well the evidentiary burden imposed by the Supreme Court's decision in Ragsdale v. Wolverine Word Wide, Inc., 535 U.S. 81. 89 (2002). First, Lipscomb avoids her admission that she was aware of the EDS attendance policy for the Delaware facility and the consequences of unexcused absences at that location. (Lipscomb Dep. at 12-13, 33-34, 38, 79-80). Indeed, Lipscomb knew both that FMLA leave was an excused absence under the EDS attendance policy, and that unexcused absences could lead to termination under that policy:

Q.      And you knew that absences covered by the FMLA were considered excused absences?

A.      Yes.

Q.      And that unexcused absences could lead to discipline?

A.      Yes.

Q       Including termination?

6

> A.    Could you repeat that, please?  I'm sorry.
>
> Q.    Sure.  ... And you knew that unexcused absences could lead to discipline, including termination?
>
> A    Yes.

(Lipscomb Dep. at 33-34).

Lipscomb received a copy of the EDS attendance policy in 2003, and she was aware of the fact that leave not covered by the FMLA might be counted as unexcused leave and might lead to termination in 2003, well before she sought to take the FMLA leave at issue in this case:

> Q.    And you knew that your leave potentially was covered by the Family Medical Leave Act, the FMLA?
>
> A    Yes.
>
> Q.    And you knew that if your leave was covered by the FMLA, it was counted as an excused absence under EDS' policy?
>
> A.    Yes.
>
> Q.    And if it is not covered, it might be counted as an unexcused absence?
>
> A    Yes.

(Lipscomb Dep. at 37-38).  Thus, Lipscomb was aware that leave not covered by the FMLA could lead to termination well before she sought to qualify her May 2004 absences as FMLA leave.[5]

In addition to being informed of the potential consequences of having unexcused absences under the attendance policy, Lipscomb also was sent five letters from EDS' third party administrator concerning her request for FMLA leave and what she needed to submit to receive

---

[5] Lipscomb's receipt of and familiarity with EDS' attendance policy also belies her reference to "the late and suspicious manner in which the attendance policy was first raised by EDS in connection with Lipscomb's termination." (Lipscomb Br. at 24).  It is undisputed that Lipscomb received this policy during her employment and signed a document acknowledging her receipt and understanding of its contents.  (Schwartz Aff., Ex. E).  Accordingly, there is nothing "suspicious" about asking Lipscomb questions about a policy she received and with which she was familiar.

7

that leave.[6] (Schwartz Aff., Exs. K, M, O, P, S). The May 20 letter to Lipscomb expressly informed Lipscomb that failure to provide certification meant that her leave would not qualify for FMLA protection. (Ex. O). Thus, Lipscomb knew that her leave would not be protected if she failed to submit her certification.

Lipscomb tries to avoid the effect of CIGNA's May 20 letter by arguing that the letter's warning regarding the consequences of failing to provide a medical certification was insufficient under 29 C.F.R. 825.301(d). To support her argument, Lipscomb relies on <u>Peter v. Lincoln Technical Inst., Inc.</u>, 255 F. Supp. 2d 417, 444 (E.D. Pa. 2002) for the proposition that EDS was required to explicitly inform her that failure to provide a medical certification could lead to termination. However, the case law cited by Lipscomb is easily undermined by the fact that it ignores the Supreme Court's decision in <u>Ragsdale v. Wolverine World Wide, Inc.</u>, 535 U.S. 81, 89 (2002). <u>Ragsdale</u> requires an employee to prove that she was **prejudiced** by an employer's violation of the FMLA. <u>Id.</u> at 89 (Noting that the FMLA "provides no relief unless the employee has been prejudiced by the [employer's] violation.")

Lipscomb testified that she was fully aware that her failure to provide an FMLA medical certification meant that her absence was unexcused, which could lead to termination. (Lipscomb Dep., at 12-13, 33-34, 37-38, 79-80). Because Lipscomb knew that non-FMLA absences could lead to termination, CIGNA's May 20 letter, which warned her that FMLA status could be denied if she failed to provide certification, fully apprised her of the consequences of not providing a certification. Thus, Lipscomb simply cannot show that she was prejudiced by the

---

[6] Although Lipscomb discussed the distinction between CIGNA and its subcontractor SHPS in her brief, Lipscomb does not claim ever to have sent any medical documentation supporting her FMLA leave to SHPS. In addition, the distinction between CIGNA and SHPS is not an important one, since EDS employees and managers called one phone number for all leave-related questions and thus were not even aware of the distinction. (Harrington Dep. at 12-13) (attached as Exhibit C hereto).

8

fact that the May 20 letter did not expressly state she could be terminated for failing to provide a certification. Ragsdale, 535 U.S. at 89; see also Brown v. SBC Communications, Inc., 2005 U.S. Dist. LEXIS 41599, * 20-21 (E.D. Wis. 2005) ("In sum, Brown knew that failure to certify his absences could result in his termination. Any failure by Wisconsin Bell to spell that out in so many words was therefore non-prejudicial and non-actionable.") (internal citations omitted).

Lipscomb also attempts to avoid the fact that she ultimately was separated pursuant to EDS attendance policy rather than the FMLA policy. (Lipscomb Br. at 22-27). Specifically, Lipscomb argues that she was not terminated for unexcused absences under the attendance policy by pointing to language which states that the policy does not apply to FMLA or other protected absences. (Lipscomb Br. at 23-24; Schwartz Aff., Ex. E). Lipscomb's effort in this regard is nothing more than an attempt to contort the attendance policy's unambiguous language and ignore its interplay with the FMLA policy. The plain meaning of the policy's language is that absences which **qualify** for FMLA or other protected status, do not count against the employee. (Schwartz Aff., Ex. E) Because she failed to provide a medical certification, Lipscomb's absences **did not** qualify for FMLA status and were subject to the requirements of the attendance policy. Lipscomb's argument simply ignores the policy's unambiguous meaning.

The conclusion that Lipscomb was separated pursuant to the Account's attendance policy is reinforced by the fact that Jackson considered placing Lipscomb on an Attendance Improvement Plan prior to termination. (Lipscomb Br. at 39). Once it was determined that Lipscomb's leave did not qualify for FMLA status, her absences were unexcused under the Account's attendance policy. Accordingly, Jackson worked with EDS human resources to design an Attendance Improvement Plan ("AIP") to obtain Lipscomb's compliance with the attendance policy. Clearly, Jackson would not have designed an AIP had Lipscomb's absences

9

not violated the Account's attendance policy  Nonetheless, because Lipscomb blatantly ignored

Jackson's requests to contact CIGNA and secure FMLA status for her leave, Jackson opted to

separate Lipscomb pursuant to the attendance policy rather than implement the AIP  (Jackson

Dep, at 78-81)

### 3.    EDS Provided Numerous Opportunities For Lipscomb To Submit The Necessary Medical Certification

The remainder of Lipscomb's interference argument is devoted to her lamentations that it

was "virtually impossible" for her to submit an FMLA certification  However, Lipscomb's

arguments in this regard do nothing to show either that she was entitled to FMLA leave or that

EDS denied her FMLA benefits to which she was entitled. See O'Reilly, 2006 U.S. Dist. LEXIS

at *10-11  Lipscomb's admissions that no one from EDS interfered with her ability to supply

medical documentation to CIGNA undermine her final arguments that it was "virtually

impossible" for Lipscomb to provide medical documentation to CIGNA  (Lipscomb Br. at 29-

35)  Lipscomb's assertions also ignore the fact that Jackson met with her no less than three times

after CIGNA sent the letters to ensure Lipscomb submitted the certification  (Lipscomb Dep., at

76-79; Jackson Dep., at 32-33, 37-39, 76-77, 81; Eaddy Dep., p. 54).  Despite Jackson's efforts,

Lipscomb never once picked up the phone and called CIGNA to ensure it received the required

documentation

As even Lipscomb implicitly concedes, by asking the Court to create new law here, an

employer can terminate an employee for failing to submit a medical certification mailed to the

employee's residence.  The FMLA regulations simply require an employer to mail notice of the

certification requirement to the employee's address of record.    29  C.F.R.  §  825.301(c)

Conversely, courts have recognized that **an employee's** FMLA obligations extend to confirming

that her FMLA documentation is **actually received**.  See Junker v. Amana Co., L.P., 240 F

10

Supp. 2d 894, 901-02.   However, EDS did far more than cause the necessary medical certification to be mailed to Lipscomb's residence.   Barbara Jackson also repeatedly met with Lipscomb to urge her to submit the necessary medical certification, and urged Lipscomb to contact CIGNA herself.   (Jackson Dep., at 32-33, 37-39, 76-79, 81; Jackson Decl. ¶ 9).   In short, Lipscomb never took the one action which could have prevented this entire litigation—calling CIGNA to ascertain whether it received her certification.   As Lipscomb admitted, no one from EDS prevented her from making such a call.   (Lipscomb Dep., at 79-80, 99-100).   Rather, Lipscomb took no action and now blames EDS for her own lack of initiative.   Accordingly, EDS is entitled to summary judgment on Lipscomb's claim of interference with her FMLA rights.

**B.     EDS Is Entitled To Summary Judgment On Lipscomb's Claim For FMLA Retaliation**

Lipscomb's claim for FMLA retaliation is, if possible, even weaker than her FMLA interference claim.   To prevail on her retaliation claim, Lipscomb must prove a causal connection between her attempts to secure FMLA leave and her separation.   Collier v. Target Stores Corp., 2005 U.S. Dist. LEXIS 6262, at * 14-15 (D. Del. 2005) (Robinson, J.).   No such causal connection exists.   As Lipscomb admitted, everyone in her EDS leadership, including Jackson, Rogers, and Eaddy, treated her fairly.   (Lipscomb Dep. at 27, 30-31).   Lipscomb admitted that no one at EDS interfered with her ability to submit medical documentation to CIGNA and that, in fact, her leadership at EDS were helpful in facilitating her medical leave   (Lipscomb Dep. at 79-80, 99-100).   Lipscomb admitted that no one at EDS ever made any disparaging comments about either her medical condition or her taking time off work, and that she was not aware of **any** EDS employee terminated for taking a medical leave.   (Lipscomb Dep. at 96)   Finally, Lipscomb was not terminated after missing work for medical reasons in 2003, even though she had not been at EDS long enough in 2003 for her leave to be covered by the FMLA.

11

In short, Lipscomb fails to present any evidence supporting her retaliation claim. Instead, Lipscomb offers speculation based on her 2003 leave and on the termination of another EDS employee, Roberta McWilliams. Lipscomb's speculation does nothing even to support her retaliation claim, much less create a genuine issue of material fact.

Lipscomb does not dispute the fact that she was not terminated after missing work for medical reasons in 2003, even though she had not been at EDS long enough to qualify for FMLA leave. (Lipscomb Dep., at 36-39; Schwartz Aff., Ex. H). Nor does Lipscomb offer any explanation as to why an employer seeking to retaliate against an employee for attempting to use FMLA leave would fail to terminate an employee who missed work for medical reasons and who was not even protected by the FMLA. If Lipscomb's taking time off for medical reasons was the real reason for her termination, Lipscomb would have been terminated in 2003, not 2004.

In addition, Lipscomb's retaliation argument conveniently avoids the multiple, good-faith efforts of Jackson and Eaddy in attempting to secure FMLA status for her leave. (Lipscomb Dep., at 76-79; Jackson Dep., at 32-33, 37-39, 76-77, 81; Eaddy Dep., p. 54). As of June 17, 2004, the date CIGNA ultimately denied Lipscomb's FMLA leave, EDS could have terminated her immediately. (Schwartz Aff., Ex. S). However, Lipscomb's EDS supervisors gave her until July 13, 2004—nearly an additional month—to obtain FMLA status for her leave. (Jackson Dep., at 32-33, 37-39, 76-79, 81; Jackson Decl. ¶ 9; Lipscomb Dep., at 76-79). Despite being given this extra time, Lipscomb never contacted CIGNA to ensure it received her information. Consistent with the adage of "no good deed goes unpunished" Lipscomb's response to these efforts is to criticize and second-guess her EDS leadership. Not only is such criticism unwarranted, it does nothing to support her retaliation claim. Rather, it is merely an excuse for Lipscomb's own lack of effort in fulfilling her requirements under the FMLA.

12

Lacking any evidence to support her **own** retaliation claim, Lipscomb is forced to bootstrap her claim with the circumstances surrounding the separation of Roberta McWilliams, a former EDS employee. Lipscomb's reasoning regarding McWilliams is convoluted, and rests on speculation that EDS was concerned about a lawsuit from McWilliams that was, in fact, never filed. Importantly, Jackson, the individual who recommended that Lipscomb be separated, was not even involved in the decision to separate McWilliams. (Jackson Dep. at pp. 9-10). Furthermore, McWilliams was terminated after failing to provide medical documentation to support her time off work, and McWilliams had completely exhausted her FMLA leave prior to her termination. (Rogers Dep. at p. 15)[7] The fact that both Lipscomb and McWilliams were terminated after failing to provide medical documentation to support their claims for FMLA leave demonstrates that EDS was being consistent in its treatment of employees, nothing more. EDS is entitled to summary judgment on Lipscomb's FMLA retaliation claim.

## III.    CONCLUSION

Despite the great length of her brief, Lipscomb still has presented no evidence that EDS sought to interfere with her rights under the FMLA or to retaliate against her in any way. As Lipscomb admits, no one from EDS interfered with her ability to submit medical documentation to support her FMLA leave, and her supervisors and co-workers at EDS in fact helped with her request for FMLA leave. EDS should not be liable for Lipscomb's failure to take advantage of the many opportunities she had to submit the medical documentation to support her request for

---

[7] Portions of the Rogers deposition are attached as Exhibit C to the Schwartz Affidavit. Additional pages of the Rogers deposition not previously included in the Schwartz Affidavit are attached at Exhibit D hereto.

FMLA leave. For the reasons stated above, EDS is entitled to summary judgment on all the claims Lipscomb brings against it.

Of Counsel:
Thomas J. Piatak
Roger G. Trim
Baker & Hostetler LLP
3200 National City Center
1900 East Ninth Street
Cleveland, OH 44114-3485
Telephone: (216) 621-0200

Richard G. Elliott, Jr. (#687)
elliott@rlf.com
Alyssa M. Schwartz (#4351)
schwartz@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King St., P.O. Box 551
Wilmington, DE 19899-0551
Telephone: (302) 651-7700

Attorneys for Defendant
Electronic Data Systems Corporation

Dated: July 18, 2006

# EXHIBIT A

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

HESTAL LIPSCOMB,                )
                               )
        Plaintiff,             )
                               )
v.                             )    Civil Action No.
                               )      05-477-SLR
ELECTRONIC DATA SYSTEMS         )
CORPORATION,                    )
                               )
        Defendant.             )

        Deposition of HESTAL LIPSCOMB taken pursuant to
notice at the offices of Richards, Layton & Finger, One
Rodney Square, Wilmington, Delaware, beginning at 10:00
a.m. on Tuesday, February 21, 2006, before Anne L. Adams,
Registered Professional Reporter and Notary Public.

APPEARANCES:

        LAURENCE V. CRONIN, ESQ.
        SMITH, KATZENSTEIN & FURLOW
          800 Delaware Avenue
          Wilmington, Delaware  19899
          for the Plaintiff,

        THOMAS J. PIATAK, ESQ.
        BAKER HOSTETLER
          3200 National City Center
          1900 East 9th Street
          Cleveland, Ohio  44114-3485
          for the Defendant.
ALSO PRESENT:  Lance Rogers, EDS

-------------------------------------------------
                WILCOX & FETZER
   1330 King Street - Wilmington, Delaware 19801
                (302) 655-0477



**WILCOX & FETZER LTD.**
Registered Professional Reporters
COPY

Hestal Lipscomb

36

1    A.    Yes.

2    Q.    Does that refresh your recollection, your memory

3    that you were off from work for some time in August of

4    2003?

5    A.    I don't recall being off in August.  I think it

6    was in April that I was out, not in August.

7    Q.    And it also, next paragraph, "You are also

8    eligible for leave under the Family Medical Leave Act of

9    1993 from August 1, 2003, through August 18, 2003, and

10   your absence will be counted as part of your

11   entitlement."  Do you see that?

12   A.    Yes.

13   Q.    And do you have any memory at all of being out in

14   August of 2003?

15   A.    No, I don't.

16   Q.    Do you have any memory of being out for medical

17   reasons at any time during 2003?

18   A.    To my recollection, I thought it was in April

19   that I was out.  If it was August, then that means I got

20   my months mixed.  But I thought it was April I was out,

21   April of 2003.  I thought it was April of 2003.  But if

22   it was August, that's my error.

23   Q.    Did you let anyone at EDS know that you were

24   going out for medical reasons in 2003?



Hestal Lipscomb

38

1    Q.    And you knew if your leave was covered by the

2    FMLA, it was counted as an excused absence under EDS's

3    policy?

4    A.    Yes.

5    Q.    And if it was not covered, it might be counted as

6    an unexcused absence?

7    A.    Yes.

8    Q.    And so do you remember talking to Tracy and her

9    saying she would take care of the FMLA paperwork?  Did

10   you have your doctors submit any medical information in

11   connection with the time you were off in 2003?

12   A.    To whom?

13   Q.    To anybody, to EDS or to MetLife Synchrony?

14   A.    I went out.  I had the surgery.  I was out two

15   weeks.  And I went back for my checkup and they released

16   me back to work.  I didn't have any paperwork or anything

17   that I had to submit to anyone or anything like that.

18   Q.    And do you remember receiving a letter, this

19   letter from MetLife Synchrony?

20   A.    No, I don't.

21   Q.    There is a paragraph on there that's in bold

22   language, bold print.  Do you see that?

23   A.    Yes.

24   Q.    "If your absence extends beyond August 18, 2003,



Hestal Lipscomb

49

1    A.    Yes.

2                (Lipscomb Deposition Exhibit No. G, Letter

3    from Cigna Group Insurance dated April 21, 2004, was

4    marked for identification.)

5    BY MR. PIATAK:

6    Q.    Hestal, I've handed you what's been marked as

7    Exhibit G.  This is a letter to you dated April 21st,

8    2004, from Cigna.  And it's addressed to you at the 2nd

9    Street address that you had at that time, right?

10    A.    Yes.

11    Q.    And this letter acknowledges your request for

12    FMLA leave.  Do you see that in the first paragraph?

13    A.    Yes.

14    Q.    And did Tracy Eddy set up this leave request for

15    you?

16    A.    Yes.

17    Q.    And that's the same that it had been in 2003 that

18    we've already discussed?

19    A.    Yes.

20    Q.    And the person, the entity evaluating the leave

21    request was Cigna?

22    A.    I don't understand.

23    Q.    This letter is from Cigna Group Insurance.

24    A.    Okay.

Hestal Lipscomb

49

1     A.    Yes.

2             (Lipscomb Deposition Exhibit No. G, Letter

3   from Cigna Group Insurance dated April 21, 2004, was

4   marked for identification.)

5   BY MR. PIATAK:

6     Q.   Hestal, I've handed you what's been marked as

7   Exhibit G.  This is a letter to you dated April 21st,

8   2004, from Cigna.  And it's addressed to you at the 2nd

9   Street address that you had at that time, right?

10     A.    Yes.

11     Q.   And this letter acknowledges your request for

12   FMLA leave.  Do you see that in the first paragraph?

13     A.    Yes.

14     Q.   And did Tracy Eddy set up this leave request for

15   you?

16     A.    Yes.

17     Q.   And that's the same that it had been in 2003 that

18   we've already discussed?

19     A.    Yes.

20     Q.   And the person, the entity evaluating the leave

21   request was Cigna?

22     A.    I don't understand.

23     Q.   This letter is from Cigna Group Insurance.

24     A.    Okay.

Hestal Lipscomb

50

1    Q.    Do you see that?

2    A.    Yes.

3    Q.    And they are the ones who were evaluating your

4    leave request?

5    A.    Yes.

6    Q.    And it states in there that, in that second

7    paragraph, "You will not be required to submit separate

8    FMLA medical certification provided your claim for

9    short-term disability benefits and/or Workers'

10   Compensation claim under your company's plan is

11   approved." Do you see that language?

12   A.    Yes, I do.

13   Q.    So if your short-term disability claim was

14   approved, there would be no need to submit any medical

15   certification for FMLA.

16   A.    Are you asking me a question, sir?

17   Q.    Yes. And then this document states that if you

18   were awarded short-term disability leave, you would not

19   be required to submit separate FMLA medical

20   certification.

21   A.    That's what it says here.

22   Q.    And this letter was sent to you?

23   A.    I didn't receive this letter though.

24   Q.    But it's addressed to your correct address at the

Hestal Lipscomb

52

1    Exhibit H.  This is also a letter to you from Cigna.  And

2    this is addressed to your current address at the time?

3        A.    Yes.

4        Q.    And what action did you take as a result of this

5    letter?

6        A.    I don't recall getting this letter.  I think if I

7    recall right, this is, I think, came after.  This was

8    around the time that I had called them to -- no, that's

9    not, no, that's not right.  I'm sorry.  I don't remember

10   this letter.

11       Q.    Do you know for a fact that you didn't receive it

12   or you just don't remember receiving it?

13       A.    I don't remember if I received it or if I didn't.

14   So I don't want to say I did and I didn't and I didn't

15   and I did.

16       Q.    With respect to the prior Exhibit G, also you

17   don't remember receiving that?

18       A.    This I know I didn't receive.  This sounds

19   familiar, but I'm not sure where, reworded or the like.

20       Q.    And Exhibit H, first paragraph acknowledges that

21   you have applied for short-term disability.  Do you see

22   that?

23       A.    Yes.

24       Q.    And you knew that if you were granted short-term

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

HESTAL LIPSCOMB,                )
                               )
              Plaintiff,       )
                               )   Civil Action
v.                             )   No. 05-477-SLR
                               )
ELECTRONIC DATA SYSTEMS        )
CORPORATION,                   )
                               )
              Defendant.       )

        Continued deposition of HESTAL LIPSCOMB taken
pursuant to notice at the law offices of Richards, Layton
& Finger, One Rodney Square, Wilmington, Delaware,
beginning at 1:32 p.m. on Tuesday, April 11, 2006, before
Eleanor J. Schwandt, Registered Merit Reporter and Notary
Public.


APPEARANCES:

        LAURENCE V. CRONIN, ESQ.
        SMITH, KATZENSTEIN & FURLOW
          800 Delaware Avenue
          Wilmington, Delaware   19801
          for the Plaintiff

        THOMAS J. PIATAK, ESQ.
        BAKER HOSTETLER
          3200 National City Center
          1900 East 9th Street
          Cleveland, Ohio  44114-3485
          for the Defendant


ALSO PRESENT: LANCE ROGERS, EDS



                WILCOX & FETZER
    1330 King Street - Wilmington, Delaware 19801
                (302) 655-0477



**WILCOX & FETZER LTD.**
Registered Professional Reporters

Hestal Lipscomb                                    69

1          Q.   Hestal, I've handed you what has been marked as

2     Exhibit K.  Do you remember receiving this document?

3          A.   No, I don't.

4          Q.   Do you know whether you received it and you don't

5     remember receiving it, or do you know for a fact that you

6     did not receive that?

7          A.   I don't recall.

8          Q.   Okay.  But this is addressed to your correct

9     address at the time?

10         A.   Yes.

11         Q.   And the letter indicates that Cigna at that date

12    had not received, these are the items that are checked,

13    confirmation of the surgical procedure you underwent,

14    medical information from Dr. Kraut to support your time

15    off work, and your signed authorization to release

16    medical information, inclusive of proof of loss form,

17    correct?

18         A.   Yes.

19         Q.   And the letter also indicates that Cigna had

20    attempted to contact you by phone on May 27th and June

21    the 1st.  Correct?

22         A.   Yes, it does.

23         Q.   What action did you take as a result of this

24    letter?



Hestal Lipscomb                                    72

1      Q.   Okay.   There may be some documents later on that

2   have some names.   And this conversation occurred after

3   Barbara Jackson told you that Cigna had not received the

4   information, correct?

5      A.   Yes.

6      Q.   And what the nurse told you was that they had

7   already previously faxed to Cigna information?

8      A.   Yes, they did, and that she would re-fax the

9   information because I requested it.

10     Q.   And that conversation is the only information you

11  had about anything being sent to Cigna, that's correct?

12     A.   Yes.

13               (Defendant's Exhibit L was marked for

14  identification.)

15     Q.   Hestal, you have been handed what has been marked

16  as Exhibit L.   This is a letter from Cigna dated June

17  17th, 2004.   This is addressed to your correct address at

18  the time, right?

19     A.   Yes, it is.

20     Q.   And this letter stated your request for FMLA

21  leave was denied as Cigna had not received a completed

22  medical certification.   Is that --

23     A.   I'm sorry.   Yes, it does.

24     Q.   Okay.   And the letter stated, "If you still want

Hestal Lipscomb

98

1    instance when Barb Jackson asked you to do something, you

2    would take care to get it done?

3        A.    Yes, if it was something pertaining to their job

4    or whatever, yes, I would.

5        Q.    Did you receive your last EDS paycheck through

6    the mail?

7        A.    I don't believe it came through the mail.    I

8    believe it actually went direct deposit, like they had

9    been doing for the entire time I was working there.

10       Q.    Okay.    Are you aware of any items sent to you

11   through the mail in the period of April through June of

12   2004 that you did not receive?

13       A.    When, sir?

14       Q.    Sure.    Are you aware of any item sent to you

15   through the mail in the period of April through June 2004

16   that you did not receive?

17       A.    Only the document that you presented to me

18   before, which I don't know the letters, and the thing,

19   letter that Barb Jackson showed me, I got that after the

20   fact.

21       Q.    Did you contact the post office concerning

22   problems receiving mail at your 3111 West 2nd Street

23   address?

24       A.    Did I contact the post office?



# EXHIBIT B

Barbara Jackson

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


HESTAL LIPSCOMB,                )
                               )
        Plaintiff,             )
                               )
v.                             )    Civil Action No.
                               )      05-477 SLR
ELECTRONIC DATA SYSTEMS         )
CORPORATION, a Delaware         )
Corporation,                    )
                               )
        Defendant.             )

        Deposition of BARBARA JACKSON taken pursuant to
notice at the offices of Smith, Katzenstein & Furlow LLP,
800 Delaware Avenue, 7th Floor, Wilmington, Delaware,
beginning at 9:20 a.m. on Wednesday, April 12, 2006,
before Robert Wayne Wilcox, Jr., Court Reporter and
Notary Public.

APPEARANCES:

        LAURENCE V. CRONIN, ESQ.
        SMITH, KATZENSTEIN & FURLOW LLP
          800 Delaware Avenue - 7th Floor
          Wilmington, Delaware  19801
          for the Plaintiff,

        THOMAS J. PIATAK, ESQ.
        BAKER HOSTETLER
          3200 National City Center
          1900 East 9th Street
          Cleveland, Ohio  44114
          for the Defendant.




                CORBETT & WILCOX
          Registered Professional Reporters
1400 French Street    Wilmington, DE 19801
                (302) 571-0510
              www.corbettreporting.com

Barbara Jackson

Page 9

1    for this deposition?

2        A.    Yes.

3        Q.    Okay.  Now, you referred to fax sheets.

4                    Are you talking about the first two

5    pages of this packet that's been marked as EDS No. 1?

6        A.    Yes.

7        Q.    All right.  Now, turning to the remaining five

8    pages, they all relate to a woman named Roberta

9    McWilliams.  Correct?

10       A.    Yes.

11       Q.    Okay.  Do you know who Roberta McWilliams is?

12       A.    I do.

13       Q.    Was she somebody you worked with?

14       A.    Yes.  On occasion.

15       Q.    All right.  Now, she's not somebody who

16   reported to you.  Correct?

17       A.    She did not.

18       Q.    Who did she report to?

19       A.    Kay Wasno.

20       Q.    Okay.  What was your position in relation to

21   Ms. Wasno's position?

22       A.    I was the claims manager, and Ms. Wasno was

23   the provider manager.

24       Q.    Okay.  So were you both at equal levels in the

Barbara Jackson

Page 10

1    organization?

2         A.    Yes.

3         Q.    Okay.  These documents regarding

4    Ms. McWilliams appear to be dated from July 9th through

5    August 5th, 2004.  Were you aware during that time period

6    that EDS was in the process of terminating

7    Ms. McWilliams?

8         A.    I was not involved in this situation.

9         Q.    Okay.  But my question was:  Were you aware?

10        A.    I was aware that they were reviewing her file,

11   but I was not involved in the decision-making.

12        Q.    Was Ms. McWilliams' situation discussed in

13   your presence at the time discussions were taking place

14   with respect to Ms. Lipscomb and her future, or lack

15   thereof, with EDS?

16        A.    No.

17        Q.    Okay.  Did you review at any time a transcript

18   of an unemployment hearing involving Ms. Lipscomb?

19        A.    Yes.

20        Q.    When did you review that?

21        A.    Yesterday evening.

22        Q.    Okay.  In preparation for the deposition?

23        A.    I don't know that it was in preparation.  I

24   had just never received a copy of it prior to that.

# EXHIBIT C

Page 1

1                IN THE UNITED STATES DISTRICT COURT

                   FOR THE DISTRICT OF DELAWARE

2

3     HESTAL LIPSCOMB,              )

                                    )

4                                   )

                   PLAINTIFF,       )

5                                   )

      VS.                           )   CIVIL ACTION

6                                   )

                                    )   NO.: 05-477 SLR

7     ELECTRONIC DATA SYSTEMS       )

      CORPORATION, a Delaware       )

8     Corporation,                  )

                                    )

9                                   )

                   DEFENDANT.       )

10

11          ---------------------------------

12                ORAL DEPOSITION OF

13                 PATTY HARRINGTON

14                   May 4, 2006

15                    Volume 1

16          ---------------------------------

17        ORAL DEPOSITION OF PATTY HARRINGTON, produced as a witness

18    at the instance of the PLAINTIFF, and duly sworn, was taken in

19    the above-styled and numbered cause on the 4th day of May,

20    2006, from 1:01 p.m. to 1:49 p.m., before Caroline Tadlock,

21    RPR, CSR in and for the State of Texas, reported by machine

22    shorthand, at the law offices of Crouch & Ramey, 1445 Ross

23    Avenue, Suite 3600, Dallas, Texas, pursuant to the Federal

24    Rules of Civil Procedure and the provisions stated on the

25    record or attached hereto.

Page 12

1      A.   Not specifically.  I was actually on a leave of

2   absence myself at the time we changed.

3      Q.   Oh, were you?

4           When were you out on leave of absence?

5      A.   Let's see.  It was September through the end of

6   November -- that would have been when all the communications

7   were going out about the changes for January of '04.  So that

8   would have been '03.

9      Q.   Okay.  So September through November was when you

10  were out, and that's when you believe employees were being

11  informed of the changes?

12     A.   Correct.

13     Q.   What is SHPS?

14     A.   SHPS is a subcontract of CIGNA, and they administer

15  our FMLA.

16     Q.   Okay.  How are employees of EDS informed about SHPS?

17     A.   Through CIGNA.

18     Q.   Okay.

19     A.   And -- it -- it appears seamless, that it's all

20  CIGNA, because our employees, our managers, have one 800 phone

21  number, one contact for their leave.  When they call in, the --

22  they'll be prompted, if it's work comp, if it's FMLA, if it's

23  STD, push 1, 2 or 3, and then the phone call is routed.  And

24  the SHPS team that's dedicated to EDS will actually answer,

25  CIGNA Leave Solutions, and their letterhead is all CIGNA Leave

Page 13

1    Solutions.  So it's -- it's pretty seamless to managers and

2    employees that there's a subcontractor handling the FMLA, and

3    it appears that it's all CIGNA.

4         Q.   Okay.  I -- make sure I understand.

5              When you say it's seamless, is it your testimony

6    that it creates the appearance for employees that it's CIGNA

7    that's handing their FMLA?

8         A.   It could.

9         Q.   Okay.  But they're not, right?

10        A.   It's CIGNA Leave Solutions, is the name of the group

11   that's handling the FMLA, and it is -- it is -- SHPS is the

12   name of the company.

13        Q.   Yeah.

14             And you understand that they're not -- they have

15   no corporate affiliation with CIGNA, correct?

16        A.   Correct.  It's a subcontract.

17        Q.   And they're -- they're not located here in Texas?

18        A.   Correct.

19        Q.   Where are they located?

20        A.   In Louisville, Kentucky.

21        Q.   And is there any way an employee could know that, an

22   employee making a claim for disability, from looking at any of

23   the documents that would have been made available to them?

24        A.   They would know it was CIGNA Leave Solutions.

25        Q.   Right.

# EXHIBIT D

Lance Rogers

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

HESTAL LIPSCOMB,                    )
                                    )
        Plaintiff,                  )
                                    )
v.                                  )    Civil Action No.
                                    )       05-477 SLR
ELECTRONIC DATA SYSTEMS             )
CORPORATION, a Delaware             )
Corporation,                        )
                                    )
        Defendant.                  )

        Deposition of LANCE ROGERS taken pursuant to
notice at the offices of Smith, Katzenstein & Furlow LLP,
800 Delaware Avenue, 7th Floor, Wilmington, Delaware,
beginning at 3:05 p.m. on Wednesday, April 12, 2006,
before Robert Wayne Wilcox, Jr., Court Reporter and
Notary Public.

APPEARANCES:

        LAURENCE V. CRONIN, ESQ.
        SMITH, KATZENSTEIN & FURLOW LLP
          800 Delaware Avenue - 7th Floor
          Wilmington, Delaware  19801
          for the Plaintiff,

        THOMAS J. PIATAK, ESQ.
        BAKER HOSTETLER
          3200 National City Center
          1900 East 9th Street
          Cleveland, Ohio  44114
          for the Defendant.

                CORBETT & WILCOX
          Registered Professional Reporters
    1400 French Street    Wilmington, DE 19801
                  (302) 571-0510
              www.corbettreporting.com

Lance Rogers

Page 15

1     A.    Yes.

2     Q.    Okay.  Then Kay indicated that FMLA was

3   provided and that Roberta had been paid through June 12th

4   and that her unexcused absence was the reason for

5   termination.  What does that mean?

6     A.    Roberta's case was extremely complicated.

7   FMLA is a collection of time over a rolling one-year

8   period.  So Roberta had used or exhausted her FMLA at the

9   time in question and was again out and claimed to have

10  been out for medical reasons.  And then when she went to

11  apply for that leave, it was denied.

12    Q.    Okay.  The time for filing an appeal for the

13  FMLA was still pending, however.  Correct?

14    A.    I believe the appeal was to an appeal.  She

15  had been denied.

16    Q.    But you decided to terminate her before the

17  appeal was resolved?

18    A.    It would appear so from these notes.

19    Q.    Okay.

20    A.    But the decision to terminate was based on the

21  denial of the short-term disability.  We were waiting for

22  the appeal of the denial of the FMLA.

23    Q.    Okay.  In fact, as you explained in connection

24  with the July 9 note here, this option two that was

## CERTIFICATE OF SERVICE

I hereby certify that on July 18, 2006, I electronically filed the foregoing with the Clerk

of Court using CM/ECF which will send notification of such filing(s) to the following and which

has also been served as noted:

### BY HAND DELIVERY

Laurence V. Cronin
Smith Katzenstein & Furlow
The Corporate Plaza
800 Delaware Avenue
P. O. Box 410
Wilmington, Delaware 19899

Alyssa M. Schwartz (#4351)
schwartz@rlf.com