# Exhibit A

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

HESTAL LIPSCOMB,                )
                                )
        Plaintiff,              )
                                )
v.                              )    Civil Action No.
                                )       05-477 SLR
ELECTRONIC DATA SYSTEMS         )
CORPORATION, a Delaware         )
Corporation,                    )
                                )
        Defendant.              )

        Deposition of BARBARA JACKSON taken pursuant to
notice at the offices of Smith, Katzenstein & Furlow LLP,
800 Delaware Avenue, 7th Floor, Wilmington, Delaware,
beginning at 9:20 a.m. on Wednesday, April 12, 2006,
before Robert Wayne Wilcox, Jr., Court Reporter and
Notary Public.

APPEARANCES:

        LAURENCE V. CRONIN, ESQ.
        SMITH, KATZENSTEIN & FURLOW LLP
          800 Delaware Avenue - 7th Floor
          Wilmington, Delaware  19801
          for the Plaintiff,

        THOMAS J. PIATAK, ESQ.
        BAKER HOSTETLER
          3200 National City Center
          1900 East 9th Street
          Cleveland, Ohio  44114
          for the Defendant.

                    CORBETT & WILCOX
            Registered Professional Reporters
        1400 French Street    Wilmington, DE 19801
                    (302) 571-0510
                www.corbettreporting.com

Page 34

1  cooperative.
2      Q.  Well, it's your word.  You said it factored
3  into your decision to terminate Ms. Lipscomb.  You've
4  mentioned the three conversations that you had June 30th,
5  July 1 and July 2.
6      A.  Mm-hmm.
7      Q.  I'm trying to find out if you believe that she
8  did anything that evidenced a lack of cooperation prior
9  to June 30th, 2004.
10     A.  I'm going to say yes.
11     Q.  Okay.  What?
12     A.  In looking at her 2004 attendance record,
13  there were latenesses.  There were verbal warnings.
14  There was a verbal warning given.  All that was certainly
15  considered.
16     Q.  Okay.  So if she had not had a verbal warning
17  in April or other tardiness, you wouldn't have
18  recommended that she be terminated?
19         MR. PIATAK:  Objection.  You may answer.
20     A.  The recommendation would have still been the
21  same.
22     Q.  Okay.  So the fact that she was tardy and that
23  she had this warning on April 16th didn't matter in terms
24  of the ultimate decision whether to terminate or not.

Page 35

1  Correct?
2         MR. PIATAK:  Objection.  You may answer.
3      A.  I don't believe that it did.
4      Q.  Don't believe what did?
5         The prior instances didn't matter in the
6  decision that you made.  Correct?
7      A.  No.
8      Q.  Is that correct?
9      A.  That is correct.
10     Q.  Okay.  Now, if it was shown to you that in
11  fact Ms. Lipscomb nine days before you first started
12  talking to her about this had been able to provide to
13  CIGNA in Texas medical records in response to your
14  request or the company's request, would you still believe
15  that she was being uncooperative?
16         MR. PIATAK:  Objection.  You may answer.
17     A.  Can you repeat that?
18     Q.  Sure.
19         If it was shown to you that
20  Ms. Lipscomb's physicians had provided CIGNA nine days
21  before you started talking to her medical records in
22  response to CIGNA's request, would you still believe she
23  was being uncooperative?
24     A.  No.

Page 36

1         MR. PIATAK:  Objection.  You may answer.
2      Q.  Excuse me?
3         MR. PIATAK:  Objection.  You may answer.
4      A.  No.
5      Q.  Okay.  You wouldn't believe she was being
6  uncooperative?
7      A.  No.
8      Q.  Okay.  If you knew that in fact CIGNA had
9  received the documents regarding her medical condition on
10  June 21st, 2004 but had simply lost them, would you have
11  still gone ahead and terminated her?
12         MR. PIATAK:  Objection.  You may answer.
13     A.  No.
14     Q.  Okay.  Now, what was Mr. Rogers' role in the
15  decision to terminate Ms. Lipscomb?
16     A.  Mr. Rogers has the ultimate responsibility for
17  the Delaware account, and he is the account manager.  So,
18  ultimately, I would -- I presented a recommendation.
19  And, ultimately, Mr. Rogers makes the final decision
20  whether, yes, we terminate or, no, we do not.
21     Q.  And your recommendation was to terminate?
22     A.  Yes.
23     Q.  Okay.  When did you present that
24  recommendation?

Page 37

1      A.  I don't remember the exact date.
2      Q.  Did you ever discuss Ms. Lipscomb's situation
3  with Mr. Rogers other than this time when you presented
4  your recommendation?
5      A.  Yes.
6      Q.  How many times?
7      A.  I believe twice.
8      Q.  When were they?
9      A.  I don't know exact dates.
10     Q.  Okay.  So you recall having three
11  conversations with Mr. Rogers about Ms. Lipscomb.  Is
12  that correct?
13     A.  Yes.
14     Q.  All right.  Would it be fair to say that the
15  last one was around July 12th or July 13th, 2004?
16     A.  I don't know that.
17     Q.  Was it close in time to the date of her
18  termination?
19     A.  Yes.
20     Q.  All right.  Now, the two earlier ones, were
21  they within days or weeks of that conversation?
22     A.  I would say within days.
23     Q.  All right.  Tell me what you can about the
24  three conversations that you had with Mr. Rogers starting

# Exhibit B

Page 1

1                    IN THE UNITED STATES DISTRICT COURT

                     FOR THE DISTRICT OF DELAWARE

2

3    HESTAL LIPSCOMB,                    )         *RECEIVED*
                                         )
                                         )         *MAY 1 8 2006*
4                                        )
                   PLAINTIFF,            )            *LVC*
5                                        )
     VS.                                 )    CIVIL ACTION
6                                        )
                                         )    NO.: 05-477 SLR
7    ELECTRONIC DATA SYSTEMS             )
     CORPORATION, a Delaware             )
8    Corporation,                        )
                                         )
9                                        )
                   DEFENDANT.            )
10

11           ------------------------------------

12                        ORAL DEPOSITION OF

13                        PATTY HARRINGTON

14                          May 4, 2006       **ORIGINAL**

15                          Volume 1

16           ------------------------------------

17       ORAL DEPOSITION OF PATTY HARRINGTON, produced as a witness

18   at the instance of the PLAINTIFF, and duly sworn, was taken in

19   the above-styled and numbered cause on the 4th day of May,

20   2006, from 1:01 p.m. to 1:49 p.m., before Caroline Tadlock,

21   RPR, CSR in and for the State of Texas, reported by machine

22   shorthand, at the law offices of Crouch & Ramey, 1445 Ross

23   Avenue, Suite 3600, Dallas, Texas, pursuant to the Federal

24   Rules of Civil Procedure and the provisions stated on the

25   record or attached hereto.

Page 26

1    says, in regard to a particular complaint, We never got it, we

2    never got the document, but the employee says it was sent and

3    can provide evidence that it was sent, such that it appears

4    that CIGNA made a mistake, would it still be EDS' view that

5    CIGNA was always right and the employee was always wrong?

6              MR. PIATAK:  Objection as to form.

7              You can answer.

8              That wasn't her testimony.

9              THE REPORTER:  I didn't hear the last part, Tom.

10             MR. PIATAK:  That wasn't her testimony.

11        A.   I -- I don't understand what you're trying to say.

12        Q.   (BY MR. CRONIN)  Okay.  What I'm trying to get at is,

13   EDS has decided to use third-party administrators to administer

14   their FMLA leave --

15        A.   Correct.

16        Q.   -- correct?

17        A.   Correct.

18        Q.   And you signed a contract -- you, EDS, signed a

19   contract with CIGNA to have them provide that service, correct?

20        A.   Correct.

21        Q.   And CIGNA, in turn, decided to contract with an

22   entirely separate corporation to perform that function,

23   correct?

24        A.   Correct.

25        Q.   Okay.  But it certainly wasn't EDS' intent, in