IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HESTAL LIPSCOMB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 05-477-SLR |
| | ) | |
| ELECTRONIC DATA SYSTEMS | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

Laurence V. Cronin, Esquire of Smith, Katzenstein & Furlow LLP, Wilmington, Delaware.  Counsel for Plaintiff.

Richard G. Elliott, Jr., Esquire and Alyssa M. Schwartz, Esquire of Richards, Layton & Finger, P.A., Wilmington, Delaware. Counsel for Defendant.  Of Counsel:  Thomas J. Piatak, Esquire, and Roger G. Trim, Esquire, of Baker & Hostetler LLP, Cleveland, Ohio.

**MEMORANDUM OPINION**

Dated:  November 28, 2006
Wilmington, Delaware

ROBINSON, Chief Judge

## I. INTRODUCTION

Plaintiff Hestal Lipscomb ("plaintiff") filed a complaint against defendant Electronic Data Systems Corporation ("defendant") on July 8, 2005, alleging interference of Lipscomb's rights under the Family Medical and Leave Act ("FMLA"), 28 U.S.C. §§ 2601 et seq., and unlawful retaliation against Lipscomb for exercising her rights under the FMLA. (D.I. 1) The discovery period in this case is closed. (D.I. 8) Presently before the court is defendant's motion for summary judgment. (D.I. 34) This court has jurisdiction over plaintiff's FMLA claims under 28 U.S.C. § 1331. For the reasons set forth below, the court grants defendant's motion with respect to plaintiff's claims.

## II. BACKGROUND

Plaintiff began her employment with defendant in July of 2002, and worked as a Specialized Support Clerk throughout the duration of her employment. (D.I. 36, ex. A at 25, 27) Plaintiff received a copy of defendant's "Delaware Healthcare Services Account Handbook" (the "DHSA handbook") in 2003 and signed an acknowledgment that she had read and understood its contents. (D.I. 36, ex. E) The DHSA handbook contains general attendance guidelines, and states:

> If any employee is absent for three (3) or more days consecutively due to a medical reason, they may be required to provide a health care provider's certification to their manager upon return to the workplace. Further, a health

> care provider's certification may be required to validate
> any other illness or time away from work due to medical
> reason, if deemed appropriate by EDS/USGS leadership.
> Excessive absenteeism may result in disciplinary action up
> to and including separation from EDS.

(Id.)

Plaintiff was supervised by Tracey Eaddy ("Eaddy"), Claims Supervisor. (D.I. 36, ex. A at 26-28) Eaddy reported to Barbara Jackson, who was a Claim Manager at the Delaware facility. (Id., ex. D at 15-17) Plaintiff's team leader was Linda Jackson ("L. Jackson"). (Id., ex. A at 27)

On or about April 20, 2004, plaintiff told L. Jackson that she needed to be absent from work for a surgical procedure. (Id., ex. J at 29; id., ex. A at 40) Plaintiff did not provide details to L. Jackson regarding the nature of the surgery or her underlying medical condition. (Id., ex. A at 41) L. Jackson relayed this information to Eaddy, who spoke with plaintiff and then contacted CIGNA, defendant's third-party administrator for its short-term disability ("STD") and FMLA plans.[1] (Id., ex. J

---

[1]Plaintiff asserts that CIGNA was not the company that was actually in charge of administering defendant's FMLA claims between April and July of 2004. (D.I. 37 at 5-6) Eaddy stated that she contacted CIGNA regarding plaintiff's leave (D.I. 36, ex. J at 29-30), and the correspondence sent to plaintiff regarding her claims was from CIGNA Group Insurance (D.I. 36, exs. K, M, O, S) or a company administering CIGNA's claims (id., exs. M, O). The record is clear that plaintiff never submitted a FMLA certification to anyone - neither defendant or any administrator. For simplicity, the court will refer to defendant's third party administrator(s) of its FMLA claims as CIGNA.

2

at 28-29)

On April 21, 2004, CIGNA sent plaintiff a letter acknowledging her request for medical leave and enclosing information on plaintiff's rights and obligations under the FMLA. (D.I. 36, ex. K) This April 21, 2004 letter advised plaintiff that "[i]f for any reason [her] short-term disability or workers' compensation claim is not approved, we will provide you with a Certification of Health Care Provider Statement to be completed by you and the attending Health Care Provider to certify your leave under FMLA."[2] (Id.)

Plaintiff was absent from work from April 29, 2004 through May 17, 2004. Prior to her absence, plaintiff obtained and submitted a note from her doctor, Jonathan Kraut, M.D. of Wilmington Hospital, at Eaddy's request. (D.I. 37 at 8; D.I. 38, ex. C at 40-42; id., ex. O) On May 17, 2004, plaintiff returned to work for defendant. Plaintiff brought with her a note from Dr. Kraut. (D.I. 36, ex. N; D.I. 37 at 12) Neither note described her medical condition or the nature of her surgery. There is no evidence of record that plaintiff or Dr. Kraut ever advised plaintiff's supervisors about the nature of her condition

---

[2]Plaintiff claims that she did not receive the April 21, 2004 letter until after she was terminated. (D.I. 38, ex. C at 50-52) The April 21, 2004 letter states that it has three enclosures, including information entitled "Your Rights under the Family and Medical Leave Act of 1993." (D.I. 36, ex. K) This attachment is not contained in the summary judgment record. (Id.; D.I. 38, ex. P)

or her required surgery.

During her absence, on May 4, 2004, CIGNA sent a letter to plaintiff confirming receipt of her claim for STD benefits. (D.I. 36, ex. M)  The May 4, 2004 letter stated that CIGNA was requesting information from Dr. Kraut, but advised plaintiff that if the needed medical information could not be obtained from Dr. Kraut, "it is your responsibility to provide [CIGNA] with the required information."  (Id.)  The letter also included a Disclosure Authorization form for plaintiff to complete and return, and informed plaintiff that all documentation must be received no later than May 19, 2004, otherwise, a determination would be made based upon the information in the file.  (Id.) plaintiff does not recall whether or not she received this letter.  (D.I. 38, ex C at 52)  It is undisputed that neither plaintiff nor Dr. Kraut provided CIGNA with any medical information before the May 19, 2004 deadline.

On May 20, 2004, CIGNA sent plaintiff another letter stating that her claim for STD benefits was denied.  (D.I. 36, ex. O) The May 20, 2004 letter enclosed a Certification of Health Care Provider Statement form for FMLA benefits, and stated that the "[f]ailure to provide this medical certification within 15 days of the date of this letter may result in denial of FMLA protection."  (Id.)  Plaintiff asserts that she did not receive the May 20, 2004 letter.  (D.I. 37 at 13; D.I. 38, ex. C at 58)

4

It is not genuinely disputed that plaintiff did not attempt to send any medical information to CIGNA within the allotted 15 days.

On May 19, 2004, Dr. Kraut filled out and signed a one-page STD claim questionnaire on plaintiff's behalf.[3] (D.I. 36, ex. T; D.I. 38, ex. R)  The STD claim questionnaire was faxed on behalf of Dr. Kraut to CIGNA on May 20, 2004 and/or June 21, 2004. (D.I. 37 at 31)  Dr. Kraut indicated on the form only: plaintiff's absence of "4/29/04 - 5/17/04"; that plaintiff received "multiple skin incisions"; that plaintiff would "return to work [on] 5/17/04"; and plaintiff would need "genetic counseling" and over-the-counter pain medications.[4] (D.I. 36, ex. T)

CIGNA sent plaintiff another letter on June 2, 2004, which stated that neither plaintiff's medical authorizations nor any medical information had been received from plaintiff or Dr. Kraut. (D.I. 36, ex. P)  The June 2, 2004 letter stated that

---

[3]The parties agree that the blank STD claim questionairre was sent to Wilmington Hospital on May 7, 2004.

[4]In contrast to the short STD claim questionnaire completed by Dr. Kraut, the "Certification of Health Care Provider" form provided to plaintiff with the May 20, 2004 letter (D.I. 36, ex. O) is far more substantive, for example, requiring a description of the medical facts to support the physician's certification and "a brief statement as to how the medical facts meet the criteria of one of these [FMLA] categories."  The certification form sent to plaintiff thus appears to comply with the requirements of 29 U.S.C.A. § 2613(b), and plaintiff has not argued otherwise.

5

"[w]ithout medical information to support your time off work we are unable to consider any benefits payable on your claim and must deny your request for benefits." (Id.) The letter gave plaintiff another 15 days to request a review of the denial and to provide medical evidence supporting her claim. (Id.) Plaintiff does not recall whether or not she received this letter. (D.I. 38, ex. C at 69) It is not genuinely disputed that plaintiff did not attempt to send any medical information to CIGNA within the allotted 15 days.

On June 17, 2004, plaintiff was sent a final letter from CIGNA, concerning her "Leave of Absence Denial." (D.I. 36, ex. S) The June 17, 2004 letter advised plaintiff that:

> Your 4/20/2004 request for a leave under the Family and Medical Leave Act (FMLA) is denied because our records indicate we have not received a completed Medical Certification within the required time frame. You may still be eligible for FMLA leave, but it could be delayed. If you still want your leave considered for FMLA protection, please submit a Medical Certification within 15 days.

(Id.) Plaintiff asserts that she did not receive the June 17, 2004 letter. (D.I. 38, ex. C at 72-74) It is not genuinely disputed that plaintiff did not attempt to send any medical information to CIGNA within the allotted 15 days.

During the final three days of the 15-day period allotted in the June 17, 2004 letter, Barbara Jackson ("B. Jackson") met with plaintiff several times regarding the status of her benefits claims. (D.I. 37 at 14) B. Jackson called CIGNA on June 30,

6

July 1, and July 2, 2004 consecutively, and was informed on each occasion that no certification had been received from plaintiff.[5] (D.I. 35 at 8-10; D.I. 36 at ¶¶ 5-7)  B. Jackson met with plaintiff on July 30, 2004, advised plaintiff that no paperwork had been received by CIGNA, and asked her to contact her physician.  (D.I. 36, ex. D at 32-33, 76-77)  B. Jackson testified that she told plaintiff that her absences would otherwise be considered "unexcused absenteeism days."  (Id.)  The next morning, on July 1, 2004, B. Jackson again spoke with plaintiff; plaintiff indicated that she attempted to call Dr. Kraut but was unable to reach him.  (Id. at 77)  B. Jackson offered plaintiff the use of a conference room to pursue obtaining the certification.  (Id.)  On July 2, 2004, B. Jackson again followed up with plaintiff; plaintiff indicated that Dr. Kraut advised her that he had faxed documentation to CIGNA. (Id.)  B. Jackson suggested that plaintiff obtain and fax the certification herself, so as to guarantee receipt by CIGNA. (Id.)

There is no genuine dispute that B. Jackson reminded plaintiff of her obligation to submit a FMLA certification to CIGNA on June 30, July 1, and/or July 2, 2004.  (D.I. 37 at 14 ("During those three short meetings, it appears that B. Jackson

---

[5]Plaintiff does not contest defendant's recount of B. Jackson's calls to CIGNA.  (D.I. 37 at 13-14)

encouraged plaintiff to submit the medical information to CIGNA")) There is also no dispute that CIGNA never received a FMLA certification for plaintiff.

B. Jackson called CIGNA two additional times, on July 5 and July 13, 2004, and was told that nothing was received for plaintiff. (D.I. 36, ex. D at 82; id., ex. I at ¶¶ 10-11) Plaintiff was terminated on July 13, 2004. At that time, plaintiff indicated that she had called CIGNA and her physicians to get medical documentation transmitted. (D.I. 38, ex. N) The record does not contain any indication that documentation was ever submitted on plaintiff's behalf.

### III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper

8

Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmoving party on that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

**IV. DISCUSSION**

    **A.  The Family and Medical Leave Act**

Congress enacted the FMLA to help working men and women balance the conflicting demands of work and personal life. 29 U.S.C. § 2601(b)(1). The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave

9

during any 12-month period for one or more of the following: . . . (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612. The FMLA also provides for "intermittent" leave, which allows an employee to take such leave intermittently when medically necessary. 29 U.S.C. § 2612(b).

There are two types of claims an employee can bring against an employer under the FMLA, "interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, see 29 U.S.C. § 2615(a)(1), and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act, see 29 U.S.C. § 2615(a)(1) & (2); 29 C.F.R. § 825.220(c) ('An employer is prohibited from discriminating against employees . . . who have used FMLA leave.')." Strickland v. Water Works & Sewer Bd., 239 F.3d 1199, 1206-07 (11th Cir. 2001); see also Bachelder v. Am. W. Airlines, Inc., 259 F.3d 1112, 1122 (9th Cir. 2001); Thomas v. Pearle Vision, Inc., 251 F.3d 1132, 1139 (7th Cir. 2001); Peter v. Lincoln Technical Inst., Inc., 255 F. Supp. 2d 417, 438 (E.D. Pa. 2002); Marrero v. Camden County. Bd. of Social Servs., 164 F. Supp. 2d 455, 463 (D.N.J. 2001).

Retaliation claims under the FMLA are analyzed under the burden shifting framework of McDonnell Douglas Corp. v. Green,

411 U.S. 792 (1973). Bearley v. Friendly Ice Cream Corp., 322 F. Supp. 2d 563, 571 (M.D. Pa. 2004); Baltuskonis v. US Airways, Inc., 60 F. Supp. 2d 445, 448 (E.D. Pa. 1999); Lepore v. Lanvision Sys., Inc., No. 03-3619, 2004 WL 2360994, at *3 (3d Cir. 2004). McDonnell Douglas sets forth a three-step analysis for retaliation claims. First, the plaintiff must establish a prima facie case of retaliation. A prima facie case of retaliation under the FMLA is established by showing: (1) plaintiff availed herself of a protected right under the FMLA; (2) plaintiff suffered an adverse employment action; and (3) there was a causal connection between the employee's protected activity and the employer's adverse employment action. Conoshenti v. Pub. Serv. Elec & Gas Co., 364 F.3d 135 (3d Cir. 2004); Bearley, 322 F. Supp. 2d at 571; Baltuskonis, 60 F. Supp. 2d at 448. "After establishing a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment action." Bearley, 322 F. Supp. 2d at 571; see also Baltuskonis, 60 F. Supp. 2d at 448. "Finally, if a legitimate non-discriminatory reason is provided, the plaintiff must present evidence to show that the defendant's proffered reasons were not its true reasons, but were merely a pretext for its illegal action." Baltuskonis, 60 F. Supp. 2d at 448; see also Bearley, 322 F. Supp. 2d at 571. In order to survive summary judgment, a plaintiff must "either

11

(i) discredit[] the [defendant's] proffered reasons . . . , or (ii) adduc[e] evidence . . . that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Torre v. Casio, 42 F.3d 825, 830 (3d Cir. 1994) (discussing McDonnell Douglas shifting burden in an Age Discrimination in Employment Act ("ADEA") case).

In order for retaliatory conduct to rise to the level of an adverse employment action under Title VII, it "must be serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment . . . ." Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300-01 (3d Cir. 1997). "An adverse employment action necessarily encompasses all tangible employment actions such as 'hiring, firing, failing to promote, reassignment or a decision causing a significant change in benefits.'" Sherrod v. Phila. Gas Works, No. 02-2153, 2003 WL 230709, *4 (3d Cir. 2003) (citing Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998)); see also Abramson v. William Patterson Coll., 260 F.3d 265, 288 (3d Cir. 2001) (finding termination of employment is clearly an adverse employment action).

### B. Defendant's Obligations Under the FMLA

The FMLA provides that an employer may require a certification issued by a health care provider to support an employee's leave due to a serious health condition. 29 U.S.C. §

12

2613(a); 29 C.F.R. § 825.305(a). The employer must provide written notice of its requirement for a certification, along with the anticipated consequences of an employee's failure to provide adequate certification. 29 C.F.R. §§ 825.301(b)(1)(ii), 825.305(a)&(d).

In this case, defendant timely informed CIGNA, its third-party administrator, of plaintiff's planned surgical procedure. CIGNA, in turn, sent to plaintiff no less than five letters requesting the medical information required to support her request for FMLA benefits,[6] and informing her that failure to timely submit the required medical information could result in her being denied said benefits. After plaintiff's return to work, she was told on multiple occasions of the need to submit the required medical information to support her request for FMLA benefits, and was further informed that failure to do so could result in her absences being considered unexcused absenteeism days. The court concludes on this record that defendant gave proper notice of the need for a medical certification, and of the consequences for failing to submit such, consistent with the FMLA. See Brown v. SBC Communications, Inc., No. Civ. A. 04-

---

[6]Although plaintiff argues that she did not receive all of the letters, the evidence of record indicates that these letters were duly mailed to the correct address and that plaintiff admits that she may have received at least some of the letters. The conclusory and unsupported assertion by plaintiff that she did not receive the letters does not create a genuine issue of material fact.

13

0290, 2005 WL 2076584, *7 (E.D. Wis. Aug. 23, 2005) (absences covered by the FMLA were considered excused absences; absences not covered by the FMLA were considered unexcused absences that could result in discipline, including termination).[7]

### C. Plaintiff Can Not Demonstrate That She was Prejudiced

In Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002), the Supreme Court held that "[29 U.S.C.] § 2617 provides no relief unless the employee has been prejudiced by the [employer's] violation." Id. In Ragsdale, the Supreme Court struck down a regulation that imposed punishment for an employer's failure to provide timely notice of its designation of FMLA leave, but did not take into account whether the employee was restrained in his or her exercise of FMLA rights by such delay or would have acted differently had notice been given. Id. at 90-91 (invalidating 29 C.F.R. § 825.700(a)). The Court in Ragsdale stated that, "[b]y mandating these results absent a showing of consequential harm, the regulation worked an end run around important limitations of the statute's remedial scheme." Id. at 91.

---

[7] Likewise, plaintiff does not raise a genuine issue of material fact based on her assertion that defendant allowed her to return to work after a two-week absence in 2003 with only a doctor's note. (D.I. 37; D.I. 39, ex. A) Even assuming that this was the case, plaintiff's experience in 2003 is not relevant to her experience in 2004, where there is no indication of record that plaintiff requested either STD or FMLA benefits in 2003, failed to abide by the requirements associated with such benefits and, therefore, was deemed absence without excuse in 2003.

14

Even were defendant's notice improper in this case, plaintiff can not meet her burden of proving any real impairment of her rights and resulting prejudice as required by Ragsdale. Id. at 82, 89.  Plaintiff knew that she had an obligation to submit documentation to substantiate her absence.  Plaintiff was reminded by B. Jackson of her obligation to submit supporting documentation several times after she returned to work.  Despite missing the final 15-day deadline of July 2, plaintiff was not terminated until July 13 – at which point she had still not furnished a certification in support of her claim.  There is no indication that plaintiff ever contacted CIGNA to discuss her responsibility or to verify whether information was received.  At the very least, plaintiff's conversations with B. Jackson demonstrated the necessity of taking further initiatives to ensure that she had met her employer's mandates.  Plaintiff never produced, or even tried to produce, a medical certification in support for her absence.

As in Brown, defendant was not in error for terminating plaintiff pursuant to its attendance policy, a policy which plaintiff acknowledged, and which indicated that an employee may be terminated for excessive absenteeism.  2005 WL 2076584 at *7. The FMLA was designed to balance the rights and responsibilities of employers and employees.  29 U.S.C. § 2601(b)(1).  Defendant fulfilled its obligations in this case, and the court declines to

15

impose on defendant more requirements than those called for by statute.[8] Plaintiff failed to provide certification for her absences; therefore, her absences were not protected by the FMLA. Plaintiff's claims for interference and retaliatory discharge under the FMLA are denied.[9]

## V. CONCLUSION

Based on the analysis above, defendant's motion for summary judgment (D.I. 34) is granted. An appropriate order shall issue.

---

[8]Another court has stated in the context of a FMLA suit against this defendant:
> French playwright Jean-Baptiste Molière suggested in his play The Misanthrope that no good deed goes unpunished. EDS repeatedly gave Love opportunities to remedy her failure to provide adequate medical certification. In addition to standard channels of acquiring information about FMLA rights, EDS also provided her a toll free telephone number access to [a EDS third-party administrator] representative, paid by her employer to aid in implementing a FMLA leave program for EDS. The question now before this court is whether EDS's actions of repeatedly giving the [p]laintiff opportunities to obtain a sufficient medical certification result in liability under the FMLA.

Baldwin-Love v. Electronic Data Systems Corp., 307 F.Supp.2d 1222, 1228 (M.D. Ala. 2004). The Baldwin-Love court answered that question in the negative, as this court does today, noting that "plaintiff [sought] to punish the defendant for allowing her additional chances after she failed to provide the certification earlier as requested." Id. at 1233 (dismissing retaliation claim as plaintiff failed to provide a certification for her absences). It is noteworthy that defendant's cognizance of its responsibilities under the FMLA and willingness to offer repeated opportunities to its employees to comply with its requests was recognized in Baldwin-Love.

[9]Accordingly, defendant's motion in limine (D.I. 45) is dismissed as moot.

16